MUTUAL FILM CORPORATION OF MISSOURI *v.* HODGES, GOVERNOR OF THE STATE OF KANSAS.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF KANSAS.

No. 597.   Argued January 6, 7, 1915.—Decided February 23, 1915.

*Mutual Film Corporation* v. *Ohio Industrial Board, ante,* p. 230, followed to the effect that state statutes imposing censorship on moving pictures, such as those of Ohio and Kansas of 1913, are valid exercises of the police power of those States, respectively, and do not interfere with interstate commerce, abridge the liberty of opinion, or delegate legislative power to administrative officers.

One who is not within the class specified in a state police statute as liable to penalties for violation thereof has no standing to attack the statute as unconstitutional.

One who simply imports moving pictures into a State and does not exhibit them has no standing to attack a statute subjecting only exhibitors or those permitting exhibitions to its penalties; nor can he, by asserting constitutional rights, enlarge the character of the statute and make it an interference with interstate commerce when it is a mere exercise of the police power of the State upon things already within it. *Savage* v. *Jones*, 225 U. S. 501, distinguished.

The fact that an exchange for moving pictures can more conveniently subject the films to censorship than the exhibitors can, does not give the non-exhibiting owner of an exchange a standing to attack the statute as to matters which affect only exhibitors.

APPELLANT, which we shall call complainant, it being such in the court below, is a Delaware corporation and the defendants are officers of the State of Kansas.

The bill attacks the validity of a law of Kansas censoring moving picture films and prays an injunction against its enforcement. The relief was denied and the bill dismissed. This appeal was then allowed.

The bill alleges that complainant is engaged in local and interstate commerce in the renting, leasing, selling and delivery of "'films'" in the State of Kansas and other States, which films have been and now are being used in the motion picture show business in Kansas, as well as elsewhere.

It is alleged that a film "may be a Scenario of an original story, or theatrical production, conceived by a writer or author. This is a sketch of a plot, or chief incidents of a libretto or play, a drama, a prose or poetical composition, depicting human life and conduct on a stage. It may be also a reproduction of animated objects, scenery, picturesque views or animals, and is descriptive, educational, instructive, as well as amusing."

The manner of the production of a film is stated, and that there are in the State about five hundred moving

picture theaters using the films and each theater uses an average of three films a day.

That a revenue in the shape of a tax of $2.00 is attempted to be imposed upon each film censored, which means a tax of $6.00 per day on the films sold, rented or used in each show, approximating $3,000 per day on the picture show business in the State, and making a total revenue of $40,000 for the first three months from the beginning of the enforcement of the act and thereafter a revenue of thousands of dollars to be imposed as a tax upon films printed and produced in Kansas.

That the act places a tax of about $300 a week on the films rented, hired and shipped into the State for the period of three months and about $6,000 for the first year and means thereafter a tax on the interstate commerce business of complainant, a similar tax to be imposed on all films produced and printed and sent into Kansas.

That upon the films brought into the State the duty of censorship is imposed upon the State Superintendent of Public Instruction, thereby attempting to place in him the exclusive power of censorship of all films sent into the State for use in the State and the power to review and stamp with his approval the films used, shipped or rented or sent into the State; and the act provides that no film shall be exempt until a fee of $2.00 be paid and that all fees shall be paid into the state treasury and credited to the general fund of the State. That on account of the way the business is conducted, complainant and other film exchanges must necessarily bear the expense of censorship, otherwise the amount of the charges therefor would be necessarily doubled or trebled.

The bill attacks the law for various reasons, having foundation, it is alleged, in the provisions of the Federal and state constitutions, which may be summarized as follows: The prohibition upon the State to lay an import or export duty; or to abridge the privileges and immunities

of citizens of the United States, the statute of the State offending in this as it places an embargo and prohibition upon citizens of other States in transacting a lawful business in Kansas. The statute violates the bill of rights of the United States and of the State of Kansas as it deprives of life, liberty and property without due process of law, and particularly of the freedom to say, write, or publish whatever one will on any subject, "being only responsible for all abuse of that liberty," and that there can be no abuse until it is judicially determined.

It is alleged that the Attorney General of the State threatens to enforce the act, although it seems to be charged that he is without the means to do so, and arrests have been made on information filed in one of the courts of the State.

The answer of defendants asserts in elaborate allegations the necessity of the act and of the censorship of films; that it is not primarily a revenue measure but is an exercise in good faith of the police power of the State for the protection of the public morals and that "the Legislature in its unimpeachable wisdom believed that uncensored pictures were detrimental to the morals and perversive of true education." In denial of any grievance of complainant under the act the answer alleges the following: "Answering still further defendants allege that this complainant has no interest in the act of the Kansas Legislature complained of nor does the complainant exhibit pictures to the people of Kansas in moving picture shows, or elsewhere, nor does the complainant come directly under the provisions of said act, nor can the complainant, as a Delaware corporation licensed to do business in the State of Missouri, transact interstate business within the State of Kansas either with or without the payment of an inspection fee under the act complained of, nor is the complainant liable to any criminal prosecution under the act complained of, but only the persons,

firms, partnerships, companies and corporations which actually do exhibit pictures uncensored within the State of Kansas in violation of the act. And defendants further allege that upon its own showing this complainant has brought only mere moot questions into this Honorable Court."

A hearing upon an interlocutory or temporary injunction was waived and the case heard upon its merits, one judge only sitting, the parties agreeing thereto.

Affidavits in support of the bill were filed. One of them was by an exhibitor of films within the State and showed the number of theaters owned by him, the number of films received by him and the price paid therefor and that they were manufactured elsewhere than in Kansas. It affirmed that he never exhibited nor has he ever seen exhibited indecent, immoral, obscene or sacrilegious pictures or films; that among the films exhibited by him is a film known as the "Mutual Weekly," which consists of photographs of events of current interest throughout the world. A list of the subjects represented is given.

An affidavit of one of the managers of the complainant was also filed giving an account of the production of the films and their distribution. After a detail of this by complainant and by other "film exchanges" renting out films in the State and which operate independently of complainant, it is said:

"In my opinion the only possible method of continuing the rental of film in the State of Kansas, if the proposed censorship law were to go into effect, would be for the film exchanges to procure the approval required by statute. There are a large number of motion picture exhibitors in the State of Kansas,—about five hundred (500). I do not believe it would be in any wise practicable for the exhibitors themselves to procure the approval of the different films. In the first place, the same subjects are rented from different film exchanges and are shown in

different theaters concurrently. No exhibitor would be in a position to know whether the subject had been approved or not, without submitting the same to the Superintendent of Public Instruction. The result would be that in almost every case each reel of film received by an exhibitor on rental for exhibit would have to be sent to Topeka for approval, because the exhibitor would not, at his peril, exhibit the same.

"The film exchange, on the other hand, could with less difficulty than the exhibitor ascertain whether a film had been approved or not, because the film exchange itself handles large quantities of films, and at least as to its own produce could keep track of the approval or non-approval thereof, therefore, making it absolutely necessary for this complainant, or the other film exchanges, to submit before renting out their films to their patrons in Kansas the films for approval.

"In the second place, in my opinion, no exhibitor would consent to pay the censoring charge on any particular reel, or reels of film, because he would insist that the film be rented out to some other exhibitor in Kansas before him so that some one else should pay the tax."

*Mr. William B. Sanders* and *Mr. Walter N. Seligsberg,* with whom *Mr. Harold T. Clark, Mr. Eugene Batavia* and *Mr. Jackson H. Ralston* were on the brief, for appellant.

See brief for appellants in No. 456, *ante,* p. 236.

*Mr. John S. Dawson,* Attorney General of the State of Kansas, and *Mr. Frank P. Lindsay,* for appellees, submitted:

The act in question is not violative of the Constitution of the United States or that of the State of Kansas. *Atkins* v. *Kansas,* 191 U. S. 207; *Adams* v. *Milwaukee,* 228 U. S. 572; *Bank* v. *Haskell,* 219 U. S. 104; *Barbier* v. *Connelly,* 113 U. S. 27; *Crowley* v. *Christiensen,* 137 U. S. 86;

*Dent* v. *West Virginia,* 129 U. S. 114; *Home Tel. Co.* v. *Los Angeles,* 211 U. S. 265; *In re Rahrer,* 140 U. S. 545; *Jacobson* v. *Massachusetts,* 197 U. S. 11; *Kidd* v. *Pearson,* 120 U. S. 1; *Lawton* v. *Steele,* 152 U. S. 135; *Leisey* v. *Harding,* 135 U. S. 100; *Lindsay* v. *Commissioners,* 2 Bay (S. Car.), 61; *Meffert* v. *Medical Board,* 66 Kansas, 710; *Meffert* v. *Packer &c.,* 195 U. S. 625; *Mugler* v. *Kansas,* 123 U. S. 623; *People* v. *King,* 110 N. Y. 418; *Purity Extract Co.* v. *Lynch,* 226 U. S. 193; *State* v. *Board of Med. Ex.,* 34 Minnesota, 387; *State* v. *Nelson,* 52 Oh. St. 578; *Schmidinger* v. *Chicago,* 226 U. S. 578; *Sentell* v. *New Orleans &c. R. R.,* 166 U. S. 698; *United States* v. *D. & R. G. R. R.,* 213 U. S. 366.

The inspection fee provided for in ch. 294, Kansas, 1913, is not violative of § 10, art. I of the Federal Constitution as laying an impost or duty on picture films and reels imported into Kansas for exhibition purposes. *American Steel Co.* v. *Speed,* 192 U. S. 500; *Austin* v. *Tennessee,* 179 U. S. 343; *Brown* v. *Huston,* 114 U. S. 622; *Dooley* v. *United States,* 183 U. S. 151; *McLean* v. *D. & R. G. R. R.,* 203 U. S. 38; *Patapsco Guano Co.* v. *North Carolina,* 171 U. S. 345; *Pittsburg Coal Co.* v. *Louisiana,* 156 U. S. 343; *Woodruff* v. *Parham,* 8 Wall. 123.

The fee provided for in said act is not an unreasonable censor or inspection charge against such picture films or reels. *Chi., B. & Q. R. R.* v. *Cram,* 228 U. S. 70; *Commonwealth* v. *Herr,* 78 Atl. Rep. 68.

The picture films or reels are proper subjects of censor or inspection by a State before they can be exhibited to the public in such State. *Bloch* v. *Chicago,* 239 Illinois, 251; *Chicago* v. *Brownell,* 146 Illinois, 64; *Chicago* v. *Bowman Dairy Co.,* 234 Illinois, 340; *Peoria* v. *Calhoun,* 29 Illinois, 317; *Commonwealth* v. *McGunn,* 100 N. E. Rep. 337; *Gundling* v. *Chicago,* 176 Illinois, 340; *Hawthorn* v. *People,* 109 Illinois, 303; *Harrison* v. *People,* 222 Illinois, 150; *Knopf* v. *People,* 185 Illinois, 20; *Leisey* v. *Hardin,* 135 U. S. 100; *Meffert* v. *Medical Board,* 66 Kansas, 710;

*Meffert* v. *Packer &c.*, 195 U. S. 625; *People* v. *Creiger*, 138 Illinois, 401; *People* v. *Cooper*, 83 Illinois, 585; *Plumley* v. *Massachusetts;* 155 U. S. 461; *Spiegler* v. *Chicago*, 216 Illinois, 114; *State* v. *State Board*, 34 Minnesota, 387; *State ex rel.* v. *Webster*, 150 Indiana, 607; *State* v. *Hathaway*, 115 Missouri, 36; *State Board* v. *Roy*, 22 R. I. 538; *Wilkins* v. *The State*, 113 Indiana, 514.

The act in question is not a revenue measure for the general fund of the State, nor is it a tax on interstate commerce in violation of § 8, Art. I of the Federal Constitution. *American Steel Co.* v. *Speed*, 192 U. S. 500; *Austin* v. *Tennessee*, 179 U. S. 351; *May* v. *New Orleans*, 178 U. S. 502; *McLean* v. *D. & R. G. R. R.*, 203 U. S. 38; *Patapsco Guano Co.* v. *North Carolina*, 171 U. S. 345; *Plumley* v. *Massachusetts*, 155 U. S. 461; *Red "C" Oil Co.* v. *North Carolina*, 222 U. S. 380; *Savage* v. *Jones*, 225 U. S. 501; *Standard Co.* v. *Wright*, 225 U. S. 540; *United States* v. *Knight*, 156 U. S. 1.

The act in question is not in contravention of § 1 of the due process clause of the Fourteenth Amendment, by imposing a fee of $2.00 per film or reel inspected under the provisions of said act. *Met. Board of Health* v. *Heister*, 37 N. Y. 661; *Cincinnati* v. *Steincamp*, 54 Oh. St. 284; *Ex parte White*, 67 California, 102; *Fire Dept.* v. *Chapman*, 10 Daly, 377; *Fire Dept.* v. *Wendell*, 37 Daly, 427; *Grant* v. *Slater M. & P. Co.*, 14 R. I. 380; *Hennessy* v. *St. Paul*, 37 Fed. Rep. 565; *Hubbard* v. *Paterson*, 45 N. J. L. 310; *In re Rahrer*, 140 U. S. 546; *Lawton* v. *Steele*, 152 U. S. 133; *Meffert* v. *Medical Board*, 66 Kansas, 710; *Mugler* v. *Kansas;* 123 U. S. 623; P. & W. Public H. & S., § 15; *Philadelphia* v. *Coulston*, 12 Phila. 182; *People* v. *King*, 110 N. Y. 418; *People* v. *D'Oench*, 111 N. Y. 359; *State* v. *Cramer*, 85 Oh. St. 349; *State* v. *Moore*, 104 N. Car. 714; *St. Paul* v. *Dow*, 37 Minnesota, 20; *Wood* v. *The State*, 42 Oh. St. 186; *Woodruff* v. *Railroad Co.*, 59 Connecticut, 63.

The act in question is not violative of § 1 of the Four-

teenth Amendment in the matter of free speech and free press, or by § 11 of the bill of rights of the constitution of Kansas. *Adams* v. *Milwaukee*, 228 U. S. 572; *Bartmeyer* v. *Iowa*, 85 U. S. 133; *Costello* v. *New Orleans*, 142 U. S. 88; *Gundling* v. *Chicago*, 177 U. S. 183; *In re Rapier*, 143 U. S. 132; *In re Horner*, 143 U. S. 570; *In re Banks*, 56 Kansas, 242; *Mahone* v. *Justice*, 127 U. S. 700; *Murphey* v. *California*, 225 U. S. 623; *New York* v. *Carr*, 199 U. S. 557; *Orient Ins. Co.* v. *Daggs*, 172 U. S. 561; *Rosenthal* v. *New York*, 226 U. S. 260; *Robertson* v. *Baldwin*, 165 U. S. 275; *Selover* v. *Walsh*, 226 U. S. 112; *Taylor* v. *Judges*, 179 U. S. 410.

The expense for approval of films would not be $39,000 for the first three months, or $25,000 for the remainder of the year; nor would the total expense to the State exceed $6,000 for the first year, or more than $3,000 per annum thereafter. *Gundling* v. *Chicago*, 177 U. S. 189; *McLean* v. *D. & R. G. R. R.*, 203 U. S. 38; *Woodruff* v. *Parham*, 75 U. S. 123.

Appellees do not admit that the films or reels contain nothing immoral, sacrilegious, or impure. *Northwestern Life Ins. Co.* v. *Riggs*, 203 U. S. 243; *Western Turf Ass'n* v. *Greensburg*, 204 U. S. 359.

MR. JUSTICE McKENNA, after stating the case as above, delivered the opinion of the court.

Necessarily the first factor to be considered is the law of the State. It is entitled "An Act regulating the exhibiting or using of moving picture films or reels; providing and regulating the examination and approval of moving picture films and reels, and fixing penalties for the violation of this act, and making an appropriation for clerical help to carry this act into effect."

The following are its provisions: On and after April 1, 1913, it shall be unlawful to exhibit or use any moving picture film or reel unless the same shall have been ex-

amined and approved by the Superintendent of Public Instruction. Films used in institutions of learning are exempt from the provisions of the act. It is made the duty of such officer to examine the films or reels intended for exhibition and approve such as he shall find to be moral and instructive and to withhold his approval from such as tend to debase or corrupt the morals. His approval is to be stamped in writing upon the films or reels approved. He is to keep a record of examinations made by him, noting those approved and those not approved, stating the reasons for the latter. A charge of $2.00 is to be made for each examination. He is given the power and authority to supervise and regulate the display of all moving picture films or reels in all places of amusement or elsewhere within the State, to inquire and investigate, and to have displayed for his benefit to aid him in his investigation, those which are intended to be displayed, and shall approve such as shall be moral and proper and disapprove such as are sacrilegious, obscene, indecent or immoral, or such as tend to corrupt the morals. His disapproval of any film or reel may be reviewed by a commission consisting of the Governor, Attorney General, and Secretary of State, and if they or a majority of them find the film or reel fit for exhibition it shall be approved. It is the duty of every person exhibiting or permitting to be exhibited any film or reel within the State to furnish the Superintendent of Instruction, if he require it, a description of such film or reel and a description of its scenes and purposes and to exhibit and display it for his examination and approval. Any person exhibiting or permitting to be exhibited any unapproved film or reel shall be guilty of a misdemeanor; and each liable to suit and separate fines.

It will be observed that the law makes only exhibitors or those permitting exhibitions of unapproved films liable to the penalties of the act, and, as we have seen, it is alleged by the defendants that as complainant is in neither

class, it has no standing to attack the statute.   To this complainant replies that its sales are interfered with, and invokes, as sustaining its right to complain, *Savage* v. *Jones*, 225 U. S. 501.   This may be; but complainant, by asserting such right, cannot enlarge the character of the statute or give to it an operation which it does not have,— cannot, for instance, make the importation of films into the State an offense under it, and not their exhibition, which only it punishes—cannot, therefore, make the act an interference with interstate commerce instead of what it is—an exercise of the police power of the State upon things within the State.   Nor can it make any difference that the "exchanges can more conveniently submit the films for approval than exhibitors can."

The opinion in No. 456 becomes applicable here.   Indeed, this case was argued conjointly with that and submitted on the same briefs.   It is here contended that the Kansas statute has the same invalidity and for the same reasons as it was contended there that the statute of Ohio had.   We need not, therefore, repeat the reasoning.   It establishes that both statutes are valid exercises of the police power of the States and are not amenable to the objections urged against them—that is, do not interfere with interstate commerce nor abridge the liberty of opinion; nor are they delegations of legislative power to administrative officers.   ·

*Decree affirmed.*