## ALEXANDER FILM CO. v. LIGON et al.

### No. 3553.

Court of Civil Appeals of Texas. Amarillo. Feb. 18, 1931.

Rehearing Denied March 18, 1931.

**314**

Nordyke & Pardue, of Lubbock, for appellant.

Alfred M. Scott, of Lubbock, for appellees.

RANDOLPH, J.

Appellant brought this suit in the county court of Lubbock county against H. L. Ligon, L. B. Rankin, and B. F. Foster for the sum of $455.40 based upon a written contract.

The defendant H. L. Ligon filed his plea in abatement and answer. On hearing of the plea in abatement, the court rendered judgment sustaining same and dismissing the plaintiff's suit and also dismissing defendant H. L. Ligon's cross-action against his codefendants. From this judgment the plaintiff film company has appealed.

The question presented by the appeal is: The plaintiff being a foreign corporation and not having obtained from the proper authorities of the state of Texas a permit to transact its business in this state, was the transaction sued on intrastate or interstate business? If the contract involved in this litigation was interstate business, the action of the court in sustaining the defendant Ligon's plea in abatement was erroneous.

The written contract sued on was dated at Lubbock, Tex., 2—18—1929 and which was signed by H. L. Ligon, provides for film advertising, and authorizes the plaintiff to display catalog films for him for a period of fifty-two weeks in two picture shows in Lub-

bock, Tex., and the film company agrees to produce one N. C. full screen trailer (each ten words or less), with all of the necessary prints of same and to ship to the theaters in the following manner: Two shipments per month to the Palace Theater. Receipt of $36 is acknowledged and the advertiser agrees to pay the balance in installments of $36 per month for eleven months. The first installment to be due in thirty days after the first shipment of service from the film company's studio. There are provisions for additional service and a reservation of the right to display national or sectional service. Also providing if any payment shall be delinquent for more than one month, all remaining installments shall become due and payable and the advertiser agrees to pay collection charges, including attorney's fees. Delinquent payments to draw the legal rate of interest.

Printed on the back of this contract is the following:

"In order that full benefits may be received from this movie playlet service, subscribers are advised to watch carefully the screening of same and to notify theater manager of any irregularity. Also see that all films are returned promptly, parcel post, by the theater at the end of their rental periods. Otherwise shipments can not be made according to schedule."

It will be observed that while the appellant had an agent in Lubbock county, who negotiated the contracts between the parties, it did not have an office for the transaction of its business in this state. Its domicile was in the state of Colorado, where it was incorporated.

The fact that the record does not include an actual sale of a definite piece of property is not conclusive of whether or not it was transacting intrastate commerce and does not change the rule to be applied to such transactions. The selling of property and the authority to sell carries with it the power to mortgage or lease.

The Supreme Court of Texas, in the case of Red River National Bank v. Ferguson, 109 Tex. 287, 206 S. W. 923, in discussing the powers of the wife to sell her separate property without the joinder of her husband, holds that such power to convey includes necessarily the power to mortgage. If that be true, and such powers of sale includes the power to mortgage, and the plaintiff having such power to sell property or merchandise in the transaction of its business, it necessarily follows that it has the lesser power to lease such property. Hence, the fact that an outright sale was not contemplated by the parties, but that the property was leased for a term, does not and cannot give the transaction the status of intrastate business. In-

terstate business has a wider definition that a mere sale of physical property, and whether or not a given transaction is a sale and delivery of property is not the sole test by which the transaction is judged.

In the case at bar, as above stated, the domicile of the plaintiff was in the state of Colorado; the manufacturing of the films leased to Ligon occurred in that state; the contract before it could be binding had to have the approval of the plaintiff corporation through its officers, and the contract expressly provides that the films, after the service was rendered in Lubbock, would be returned to the home office in the state of Colorado.

The appellee contends that the contract was essentially one for continued local personal service through Texas labor and with Texas facilities. It is true that the record shows that the plaintiff corporation had entered into another contract with the picture shows to run the advertising films, advertising the business of defendant Ligon. This contention is answered by the Commission of Appeals with the express approval of the Supreme Court in the case of Southwest General Electric Co. v. Nunn Electric Company, 283 S. W. 781. In that case the contract between the appellant and appellee contained the following provisions:

"The agent shall sell or otherwise distribute lamps from the manufacturer's store only in packages or wrappers supplied by the manufacturer, which among other things, will contain a notice substantially in the following form: 'The lamp (s) contained herein is (are) manufactured by the Edison Lamp Works of the General Electric Company, which sells its Mazda and Gem Lamps exclusively through its own branches and agents direct to the consumer.'"

The further provision as follows:

"(a) To distribute lamps from the manufacturer's store in the custody of the agent to those agents holding agency appointments from the manufacturer whom this agent may be given by the manufacturer written authority to serve; (b) to sell to any consumer, within domestic territory * * * lamps for immediate delivery from said store in broken package quantities, * * * and to sell from said store to any purchaser under written contract with the manufacturer for the Edison brand of lamps on the manufacturer's standard form, and to whom the agent may be given by the manufacturer written authority to deliver lamps at the prices set forth in said contract."

In passing upon this question, the Commission of Appeals says:

"But the question remains, Does the incorporation in the contract of the provisions above quoted compel a different conclusion in this case; that is, that the contract on the whole shows that the General Electric Company was transacting business in Texas? We do not think so. Of course the execution of the contract itself was the transaction of business, but it was not a transaction of business in Texas. It was interstate in its character, and therefore not within the prescription of the statute. It is, so far as this case is concerned, only the transaction of business in Texas that is forbidden except upon the state's permit. Now, clearly it seems to us, the only business to be transacted or that was transacted in Texas, so far as the General Electric Company is concerned, was the sale of the lamps, and the accounting therefor. It is true in the nature of things there are stipulated many regulations and limitations upon the manner of doing this business. This is to be expected. The title to the goods was retained in the manufacturer until they were actually sold. The manufacturer was vitally interested, not only in the volume of sales to be made under the contract, but likewise in those numerous details calculated to build up a permanent demand for this particular brand of goods through satisfied customers and the like. The manufacturer stipulated that the goods were to be properly displayed, and that certain helpful advertisements should accompany sales. The contract limits the district and customers to be supplied by the agent. But the fact remains that the business of selling the products in Texas under the limitations and qualifications prescribed was that of the Nunn Electric Company. * * *. The business of selling the consigned stock is entirely different and apart from the business of consummating the consignment contract. The latter involves the execution of the contract, while the former consists in the performance of its terms. * * * Granting exclusive right to purchase and sell goods in a stated territory; requiring a stated stock of goods to be kept on hand; requiring goods to be located in a particular place or displayed in a particular way, or to be properly cared for; agreement to insure in favor of the owner, or to permit the owner to inspect at will; obligating the purchaser or consignee to keep and send an inventory to the owner on request, not to sell except at fixed prices, not to sell other goods; agreement by the consignee to distribute advertising matter; permitting the consignee to defer payment until goods are resold; requiring purchaser to devote entire time to sale of the goods, or to pay proper attention to sale, or conserve the best interests of the agency, or to use best endeavors to further business or push sales; agreement not to assign agency or remove it"—does not constitute the operation of the business.

Further, that case says:

"Assuming, as we must, that the real nature of the transaction is disclosed in the con-

tract, we must hold that there is nothing to show that General Electric Company was transacting business in Texas so as to impose upon it the necessity of obtaining the permit required by law. There would be fully as much reason for holding the General Electric Company liable personally for the rents, salaries, and other expenses of the Nunn Electric Company as to hold it liable for the consequences of a failure to take out a permit. The contract contemplates that everything that is done in Texas under its terms in furtherance of the business authorized is to be done by the Nunn Electric Company, who alone is transacting business in this state. There is nothing in the contract to bring the case within the rule that the foreign corporation maintains a stock of goods or wares within the state from which it makes sales directly, by consignment, or otherwise. It does nothing of the kind. All its sales are by consignment under allowable limitations and regulations."

We therefore hold that the trial court erred in sustaining the plea in abatement, and reverse the judgment of that court and remand the case for a new trial.