## LIGON v. ALEXANDER FILM CO.

### No. 1593—5968.

Commission of Appeals of Texas, Section A.

Dec. 22, 1932.

Alfred M. Scott, of Lubbock, for plaintiff in error.

G. V. Pardue, of Lubbock, for defendant in error.

HARVEY, P. J.

The defendant in error, the Alexander Film Company, brought this suit in the county court of Lubbock county, against the plaintiff in error, H. L. Ligon, seeking to recover the sum of $455.40, due under a written contract made by and between the company and Ligon, on February 18, 1929. The film company is a Colorado corporation and has its offices in that state, and conducts a studio there for the manufacture of moving picture films containing advertising matter relating to the business of its customers. The company has never filed in the office of the secretary of state of Texas, its articles of incorporation, or obtained a permit to transact business in Texas, as provided by article 1529 of our statutes (Rev. St.). Because of this noncompliance with said statute, Ligon sought the abatement of the company's suit, by virtue of the provisions of article 1536 of the statutes. The trial court sustained the plea in abatement and entered judgment dismissing the suit. The Court of Civil Appeals reversed that judgment, and remanded the cause for trial on the merits, 36 S.W.(2d) 313.

Ligon resides in the city of Lubbock, Tex., and is engaged there in the transfer and storage business. On February 18, 1929, the written contract sued on was signed in Lubbock by Ligon and the soliciting agent of the film company. The instrument provided, however, that same would not bind the company until same was forwarded to the offices of the company, in Colorado, and approved by the company. This was done, and the contract was signed by the company, in Colorado. It may be well to explain, at this point that the Palace Theater and the Lindsey Theater, mentioned in the contract sued on, are moving picture theaters located in Lubbock, and are owned and operated by a partnership, of which neither the film company nor Ligon is a constituent.

The material provisions of the contract sued on read as follows: "The undersigned advertiser (Ligon) subscribes for film adver-

tising service and authorizes the Alexander Film Company, of Colorado Springs, Colorado, to display catalogue films for a period of 52 weeks," in the Palace and Lindsey Theaters. "The Film Company will produce one N. C. full screen trailers (each ten words or less) with all of the necessary prints of same and ship same to the theaters in the following manner: Two shipments per month to the Palace Theater. Receipt of $36.00 is hereby acknowledged. The advertiser agrees to pay the balance in installments of $36.00 per month for eleven months. The first installment shall be due thirty days after the first shipment of service from the Film Company's Studio. This amount includes theater screening charge. * * * The Film Company reserves the right to display national or sectional service on the screen, which display shall not be construed as a violation of any exclusive rights the advertiser may have contracted for. * * *"

On the back of the instrument is printed the following:

"To Subscribers.

"In order that full benefits may be received from this Movie Playlet rental service, subscribers are advised to watch carefully the screening of same and notify theater manager of any irregularity. Also see that all films are returned promptly, parcel post, by the theater, at the end of their rental periods. Otherwise, shipments cannot be made according to schedule. Movie playlets are syndicated films designed to advertise the business and service of our money customers. The wording or action cannot be changed from that shown in the catalogue. Trailer Copy cannot be altered, except by purchase of a new trailer. Individuality is brought out in the special trailer which follows the movie playlet. The same copy is used for trailers throughout the subscription unless additional trailers are ordered at regular rates. In case suitable copy is not furnished by advertiser at time of signing subscription, the Film Company may design same according to its best judgment. Trailers are not produced until payment is received. Extras:—Wordage beyond 10 words may be furnished at the rate of $1.00 per foot (figure one word to foot). The above extras are for production and are to be paid at the time of signing subscription."

Some time before the above contract was made, the owners of the Palace and Lindsey Theaters had contracted with the film company to exhibit, on the screens of said theaters, during public performances conducted by the theaters, advertising films of the character of those contemplated by the film company—Ligon contract. Said contract between the film company and the theater owners subsisted until more than 52 weeks after the film company—Ligon contract was made, and the theater owners publicly exhibited on the screens of said theaters the advertising films called for by the last-mentioned contract, and for the period of time there specified. These exhibitions of said films were made by the theater owners in carrying out their obligations to the film company under their contract with the company. Ligon was not a party to that contract. He made no agreement with any one, except the film company, with reference to said films or their exhibition in said theaters.

■ The main question presented is whether the trial court erred in dismissing the film company's suit, for the reasons stated. Before discussing that question, however, we may as well dispose of the contention of the film company, to the effect that the Supreme Court was without jurisdiction to grant the writ of error herein. Article 1728 of the statutes expressly provides that the Supreme Court has appellate jurisdiction of cases "involving the construction or the validity of statutes necessary to a determination of the case." Under that provision of the statute, the Supreme Court has jurisdiction to grant the writ of error for the purpose of determining the question as to the application of a statute to the facts of a particular case, where such determination by the Supreme Court will necessarily determine the disposition to be made of the case by that court. The application of the provisions of articles 1529 and 1536 to the state of facts presented by this record is the very question to be determined in the present case. This, of course, involves the determination of the character of the transaction out of which the claim of the film company arose; but a determination of that matter is a necessary step in reaching a conclusion as to the applicability of said statutes. Brown v. Fore (Tex. Com. App.) 12 S.W.(2d) 114, 63 A. L. R. 435.

■ Reverting to the main question, the important consideration is whether the transaction, from which the claim sued on arose, comprehended nothing more than a transaction in interstate commerce. If it did, then the provisions of article 1529 do not apply, and the provisions of article 1536 do not hinder a suit on the claim in the courts of this state. It may be granted without further ado, that had the transaction between the company and Ligon contemplated the doing of nothing by the company except to manufacture the films according to contract requirements and to ship them to the theaters at Lubbock, for the use and benefit of Ligon, the transaction would have been one of interstate commerce exclusively. It is perfectly plain, however, that the contract between the film company and Ligon contemplated, as the main object of the compa-

ny's entire undertaking, the public exhibition of the films in the theaters at Lubbock. The matter of publicly exhibiting the films was essentially intrastate business. Mutual Film Corporation v. Industrial Commission, 236 U. S. 230, 35 S. Ct. 387, 59 L. Ed. 552, Ann. Cas. 1916C, 296; Mutual Film Corporation v. Hodges, 236 U. S. 248, 35 S. Ct. 393, 59 L. Ed. 561. There was no inherent and intrinsic relation between the undertaking of the company to manufacture the films, 'and to ship them to Lubbock, and the company's undertaking to publicly exhibit the films in the theaters at Lubbock. The matter of manufacturing and shipping the films was but incidental to the accomplishment of the essential purpose of the contract; namely, the advertising at Lubbock, the business of Ligon, by the use of the films. The circumstance that interstate commerce was involved in the manufacture and shipment of the films does not alter the intrastate character of the public exhibition of the advertising matter contained in the films. The situation is controlled by the same principle as were the cases of Browning v. Waycross, 233 U. S. 16, 34 S. Ct. 578, 58 L. Ed. 828; General Ry. Signal Co. v. Virginia, 246 U. S. 500, 38 S. Ct. 360, 62 L. Ed. 854. That principle is explained and distinguished in York Mfg. Co. v. Colley, 247 U. S. 21, 38 S. Ct. 430, 62 L. Ed. 963, 11 A. L. R. 611.

We recommend that the judgment of the Court of Civil Appeals be reversed, and that the judgment of dismissal entered by the trial court be affirmed.

CURETON, C. J.

The judgment of the Court of Civil Appeals is reversed, and that of the county court is affirmed, as recommended by the Commission of Appeals.