**EUREKA PRODUCTIONS, Inc., v. LEHMAN, Governor of New York, et al.**

District Court, S. D. New York.

Dec. 14, 1936.

Henry Pearlman, of New York City, for complainant.

John J. Bennett, Jr., Atty. Gen. (Henry Epstein, Sol. Gen., of Albany, N. Y., and John F. X. McGohey and Dorothy U.

**260**

Smith, Asst. Attys. Gen., of counsel), for defendants.

Before MANTON, Circuit Judge, and PATTERSON and MANDELBAUM, District Judges.

MANTON, Circuit Judge.

This application is for a preliminary injunction before a court convened pursuant to section 266 of the Judicial Code, as amended (28 U.S.C. § 380 [28 U.S.C.A. § 380]), to restrain the defendants, state officials, from interfering with the exhibition, within the state of New York, of a film entitled "Ecstasy." Decision is to be determined upon a summons and complaint, answer and affidavits for and against the motion.

The complainant alleges it purchased this film from the Elekta Film Corporation of Prague, Czecho-Slovakia, with exclusive rights to its distribution, exploitation, and exhibition; that a print of that film was imported into the United States. The film, after it was screened and exhibited before customs officials as provided by section 305 of the Tariff Act of 1930, 46 Stat. 688 (19 U.S.C.A. § 1305), was admitted as an import December 5, 1935. Subsequently, the Motion Picture Division and the Commissioner of Education of the state of New York refused the complainant's application for a permit to exhibit the film within the state because it was indecent and immoral and would tend to corrupt morals. Article 43 of the Education Law (Consol.Laws, c. 16), § 1082.

This refusal to grant a permit is challenged because it is claimed to encroach upon federal power over foreign commerce in violation of the Constitution (article 1, § 8). It is also contended that by legislation the federal government has spanned the entire field of regulation, thereby superseding state legislation in accordance with Article 6 of the Constitution. The argument is made that, since the federal authorities admitted the film, determining it not to be immoral within section 305 of the Tariff Act of 1930, its exhibition within a state may not later be prohibited by the state authorities.

We need not consider the defendants' contention that the film is not the same article which was received in foreign commerce, since it was re-edited after entry into the United States to make it adaptable to American audiences, for we think that censorship by statutory regulation in the state of New York constitutes no burden upon foreign commerce. The licensing provision of the state statute applies equally to all films sought to be exhibited within the state. It is intended merely to regulate their local use. Pathe Exchange v. Cobb, 202 App.Div. 450, 195 N.Y.S. 661, affd. 236 N.Y. 539, 142 N.E. 274. Whether it be interstate or foreign commerce, the validity of a state statute is to be determined by its practical effect. Baldwin v. G. A. F. Seelig, Inc., 294 U.S. 511, 55 S.Ct. 497, 79 L.Ed. 1032; Corn Products Ref. Co. v. Eddy, 249 U.S. 427, 39 S.Ct. 325, 63 L.Ed. 689, but cf. DiSanto v. Penn., 273 U.S. 34, 47 S.Ct. 267, 71 L. Ed. 524. This state regulation of a strictly local use can hardly be said to burden foreign commerce. In regulating the local exhibition of films, the state exercises its police power after the article has lost its character as an import and consequently does not invalidly interfere or conflict with the exercise of federal power. Mutual Film Corp. v. Industrial Comm. of Ohio, 236 U.S. 230, 35 S.Ct. 387, 390, 59 L.Ed. 552, Ann.Cas.1916C, 296; Fox Film Corp. v. Trumbull, 7 F.(2d) 715 (D.C.Conn.). In the Mutual Film Corp. Case, supra, motion pictures were shipped in interstate commerce and an Ohio state statute dealt with their censorship for exhibition in Ohio. The court said: "The censorship, therefore, is only of films intended for exhibition in Ohio, and we can immediately put to one side the contention that it imposes a burden on interstate commerce. * * * It is only films which are 'to be publicly exhibited and displayed in the state of Ohio' which are required to be examined and censored. It would be straining the doctrine of original packages to say that the films retain that form and composition even when unrolling and exhibiting to audiences, or, being ready for renting for the purpose of exhibition within the state, could not be disclosed to the state officers. * * * There must be some time when the films are subject to the law of the state, and necessarily when they are in the hands of the exchanges, ready to be rented to exhibitors, or have passed to the latter, they are in consumption, and mingled as much as from their nature they can be with other property of the state."

See, also, Mutual Film Co. v. Industrial Comm. of Ohio, 236 U.S. 247, 35 S.Ct. 393, 59 L.Ed. 561; Mutual Film Co. v.

Hodges, 236 U.S. 248, 35 S.Ct. 393, 59 L.Ed. 561.

We cannot accept the argument that the character of foreign commerce persists through the exhibition of the film in the state after its arrival. If, after a film passes in interstate commerce into a second state for exhibition, the regulatory laws of that second state are enforceable, we think the same applies to a foreign film after its arrival and readiness for distribution and exhibition. All films, domestic and foreign, offered for exhibition in the state of New York, are subject to uniform regulations by the provisions of the statute. The statute did not deal differently with foreign films. All are required to meet the same standard of decency and morality.

■■ Various actions of the federal law (section 305 of the Tariff Act of 1930, Title 19 U.S.C.A. § 1305; Title 18 U.S.C.A. §§ 396, 512, 405, 406, 407) are relied on as supporting the contention that Congress intended to regulate exclusively the exhibition of films and that the state cannot interfere. Undoubtedly, in a conflict between federal and state legislation, the former is superior. Oregon-Washington R. & Nav. Co. v. Washington, 270 U.S. 87, 46 S.Ct. 279, 70 L.Ed. 482. We need not consider whether Congress could regulate the exhibition of films within a state, for it is clear that it has not undertaken to do so. Section 305 of the Tariff Act of 1930 regulates the admission of films into the United States and provides for their seizure and forfeiture. Section 245 of the Criminal Code, as amended (18 U.S.C.A. § 396), makes it a crime to enter or cause to be brought into the United States or to knowingly deposit with any express company or other common carrier an obscene or lewd film. These statutes have the same scope and application as provisions relating to prize-fight films. 37 Stat. 240, 18 U.S.C.A. § 405. In Weber v. Freed, 239 U.S. 325, 36 S.Ct. 131, 60 L.Ed. 308, Ann.Cas.1916C, 317, it was held that Congress could validly prohibit the importation of these films. To the objection that Congress had exceeded its power since it actually meant to regulate the subsequent exhibition of these films, the court said that it could not inquire into the motives of Congress and that, if the objection was sustained, federal power over foreign commerce would be destroyed wherever an imported article was designed for subsequent use. The purpose of Congress was to supplement and aid state legislation, leaving the matter of local exhibition for determination by the states. United States v. Johnston (D.C.) 232 F. 970.

■ Congress, therefore, did not seek to supersede the police power of the state, and the judgment of the federal officers in admitting the film did not prevent the state officers from arriving at a different judgment when it came to the exhibition of the film and the granting of a license therefor.

The motion is denied.