44 So.2d 581

**ALEXANDER FILM CO. v. STATE.**

3 Div. 561.

Supreme Court of Alabama.

Jan. 19, 1950.

Rehearing Denied March 9, 1950.

Rushton, Stakely & Johnston, Montgomery, for appellant.

A. A. Carmichael, Atty. Gen., and Gardner F. Goodwyn, Jr., Asst. Atty. Gen., for appellee.

FOSTER, Justice.

The question on this appeal is whether appellant is liable for the State license tax prescribed by section 456, Title 51, Code, on one engaged in the business of billposting or advertising by making displays in public places.

Appellant was incorporated under the laws of Delaware with its principal place of business in Colorado Springs, Colorado. Its activity in this State is thus summarized by appellant:

"The defendant has a traveling representative who goes through the various states, including the State of Alabama. The representative contacts places of business in the various communities, and suggests the furnishing of a film to advertise the business of the particular customer. If the prospect desires film advertising, a written contract is entered into under the terms of which the customer agrees to pay for the rental of the film and the display space on the screen of the theatre in his community. The contract is sent to the home office in Colorado, and must be accepted by the home office before it becomes a binding contract. After the contract has been entered into, the representative calls on a theatre in that community to arrange for space and time on behalf of the customer for the showing of the film. A written contract is entered into between the theatre and Alexander Film Company, wherein the theatre agrees to show the film on behalf of the customer at a certain agreed rate per week. This contract must also be sent to the home office in Colorado for acceptance before it becomes binding.

"Thereafter, in accordance with the contract, the film is shipped from Colorado Springs direct to the theatre where it is used as a display on the screen of the theatre for the specified period of time and the film is then returned direct to Alexander Film Company, in Colorado Springs. The film at all times remains the property of Alexander Film Company. This statement constitutes the general manner in which the business of Alexander Film Company is handled in the State of Alabama and in all other states. * * *

"Between October 1, 1941 and September 30, 1946, Alexander Film Company had at different times four representatives who worked on commission in the State of Alabama and other states, and who lived in the State of Georgia. The company had only one representative at any one time. * * *

"The contract is signed by the representative but is not binding on the film company until signed in Colorado. * * *

"Ordinarily the first rental installment is delivered to the salesman by check payable to Alexander Film Company, at the same time that the subscription contract is signed in Montgomery County, and the check is then mailed to the home office in Colorado. * * *

"The sales representative has no authority, and it is not his duty to collect any delinquent installments. In some few instances he will pick up an installment payment whether delinquent or not if he happens to be in the community and is soliciting additional business from that customer. If he does make a collection, the checks are made payable to Alexander Film Company and mailed to the home office in Colorado. * * *

"The sales representative has made some collections, but the records do not disclose whether they were delinquent or regular installment payments. In each instance, the funds were transmitted to Alexander Film Company in Colorado by the salesman. * * *

"The advertising film was shipped from Colorado Springs to the theatre. Payment was made to the exhibitor by check mailed from Colorado Springs at the end of each month. * * *

"Library films with the name plate of the advertiser (called a trailer) attached were shipped to the theatre in accordance with the contract. The advertiser sent his payments to Alexander Film Company. Alexander Film Company paid the theatre. * * *

"The films used were what are known as Library Films, which are sixty feet in length including the name plate. Many prints are made from the same film, and the film advertising the particular type of business, such as a grocery store, drug store, garage, or any other retail or wholesale business; and the library films are changed each week in the theatre so that there is no more than a week's time of repetition of the same film. Each of the films has the name trailer of the advertiser attached."

█ The question of appellant's liability for the license tax here involved is dependent upon whether or not appellant is transacting the business of displaying advertisements in public places in this State within the meaning of section 456, supra. In order for appellant to be so engaged, it is necessary that it be present in Alabama by some authorized instrumentality acting for it. If appellant carries on no business within the State by a duly authorized instrumentality, it is not subject to a license tax under section 456, supra. James v. United Artists Cor., 305 U.S. 410, 59 S.Ct. 272, 83 L.Ed. 256.

█ The question we are concerned with is not altogether the same as that which is controlling in determining whether a foreign corporation is conducting some of its corporate functions in Alabama so as to be subject to those laws of this State which specify the conditions upon which such business may be done by a foreign corporation. If appellant was conducting a form of business in this State as prescribed in section 456, supra, it is liable for the tax regardless of whether or not such form of business was one of its corporate functions. But the cases on that subject are directly in point in determining whether or not such foreign corporation is engaged in a particular activity within the State, which activity is the subject of controversy, and whether that activity is so related to interstate commerce as to be exempt from local taxation.

In our case of Alabama Western R. Co. v. Talley-Bates Construction Co., 162 Ala. 396, 50 So. 341, the appellee was a construction company which had made a contract for the building of a railroad in Alabama and was suing the railroad on the contract for so doing. The railroad company claimed that the appellee, plaintiff in the case, had not complied with the law applicable to foreign corporations doing business in the State. Appellee countered with a claim that it was not so engaged in business, but that its contract with the railroad company was made wholly outside of the State, that it did no act in furtherance of the contract in the State but that such as was done under said contract was by independent subcontractors who were not agents of the Talley-Bates Construction Company. The question was whether or not by having work done by an independent contractor the original contractor was doing business in Alabama. The conclusion was easily reached in that case that the question is not dependent upon one of principal and agent, but since it was performing the services through the instrumentality of contractors it was so engaged in business within the meaning of our statute, supra.

This idea has been applied specifically to the instant situation in the case of Tad Screen Advertising v. Oklahoma Tax Com., 10 Cir., 126 F.2d 544. The Tad Company there was engaged in the same kind of business in which appellant here was engaged, and the question was the liability of the Tad Company for a two percent gross receipts tax imposed upon the following, "ad-

-vertising of all kinds, types and characters including any and all devices used for advertising purposes 'and the servicing of :same."

■ There is no material difference therefore in the question there presented and the one here involved. The court in that case referred to the well-established principle that an article which has been transported in interstate commerce having arrived at its destination and there held for use or disposal, becomes subject to the state taxing and police power. Such a principle is of course now unquestioned. Henneford v. Silas Mason Co., 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814; McLeod v. J. E. Dilworth Co., 322 U.S. 327, 64 S.Ct. 1023, 88 L.Ed. 1304; Browning v. City of Waycross, 233 U.S. 16, 34 S.Ct. 578, 58 L.Ed. 828; General Railway Signals Co. v. Virginia, 246 U.S. 500, 38 S.Ct. 360, 62 L.Ed. 854; Mutual Film Corp. v. Industrial Com. of Ohio, 236 U.S. 230, 35 S.Ct. 387, 59 L. Ed. 552, Ann.Cas.1916C, 296; Mutual Film Corp. of Missouri v. Hodges, 236 U.S. 248, 35 S.Ct. 393, 59 L.Ed. 561.

The court then proceeded to hold that the primary purpose of the contract was the service which was agreed to be rendered under it in exhibiting the advertising films in local theatres and that this primary purpose was carried on through subcontractors, which were the local theatres and, therefore, the taxable event was the service in thus screening the films in local theatres.

The court further held that the fact that the advertising company performed its contract through independent contractors did not affect the question of the tax liability of the advertising company, arguing that such company was primarily responsible to the advertisers for furnishing its service and agreed with the advertisers that it would furnish the advertising service and was paid by them for such service. The local theatres (as here) were not paid by the advertisers but by the advertising company—Tad Company—and the fact that the Tad Company employed a subcontractor to perform the service did not change its obligation to the advertisers.

This principle has likewise been carried into effect in a case in Texas in which this appellant was a party, without directly referring to the fact that the service was actually rendered by a subcontractor. Ligon v. Alexander Film Co., Tex.Com.App., 55 S.W.2d 1030. Otherwise the same reasoning was followed as in the Tad Company case, supra. This was also true in another Tad Company case of State, for Use and Benefit of Independence County v. Tad Screen Advertising, 199 Ark. 205, 133 S.W. 2d 1.

■ It is noted that in this case the license is not imposed upon one soliciting in this State contracts for the shipment of goods in interstate commerce, which of course would be without the authority of this State. McCarter v. City of Florence, 213 Ala. 367, 104 So. 806; City of Roanoke v. Stewart Grocery Co., 235 Ala. 23, 176 So. 820; Fox Film Co. v. Trumbull, D.C., 7 F.2d 715; United Artists Corp. v. Taylor, 248 App.Div. 207, 288 N.Y.S. 946; Eureka Productions v. Lehman, D.C., 17 F.Supp. 259: as also would be the leasing or distribution of films in interstate commerce. Binderup v. Pathé Exchange, 263 U.S. 291, 44 S.Ct. 96, 68 L.Ed. 308; State v. Paramount Publix Corp., 178 La. 818, 152 So. 534; 15 Corpus Juris Secundum, Commerce, § 112(f), page 470; 11 Am.Jur. 38, section 39.

■ It is not the activity of the representative of the appellant in this State in securing the contract of shipment in interstate commerce which is sought to be taxed by section 456, supra. It is the service performed in this State of screening the films for advertising purposes, which is done wholly in this State, that is made the basis of the tax. So that the question is not controlled by any principle of interstate commerce. The taxable event occurred after the completion of interstate commerce.

■ It is our view from the foregoing discussion that the record shows a liability of appellant for the tax prescribed by section 456, supra, and there is no other insistence of error made on this appeal.

444

The judgment of the circuit court holding appellant liable for such tax is therefore affirmed.

Affirmed.

BROWN, LIVINGSTON, LAWSON and SIMPSON, JJ., concur.

