The Competitive Edge, Inc. (hereinafter Competitive Edge) appeals the lower court's directed verdict in favor of Tony Moore Buick-GMC, Inc. (hereinafter Moore-GMC). *Page 1243 
This case arose out of a complaint filed by Competitive Edge against Moore-GMC on January 28, 1985. The complaint consisted of two counts, one seeking the sum of $7,270.99 by way of an open account, and one claiming the same sum due for work and labor performed in Alabama. After the close of its evidence, Competitive Edge moved to dismiss the count seeking recovery for work and labor performed, which motion was granted. Moore-GMC then moved for a directed verdict on the ground that Competitive Edge was a foreign corporation not qualified to do business in Alabama within the meaning of Ala. Const. art. XII, § 232, and §§ 10-2A-247 and 40-14-4, Code 1975, and that, therefore, its contract upon which it sued was void and unenforceable. The trial court granted Moore-GMC's motion. Competitive Edge appeals to this court. The facts are as follows.
Competitive Edge is an advertising agency which provides advertising and marketing services to automobile dealers to help dealers market their automobiles. Competitive Edge is a foreign corporation, with its home office located in Albuquerque, New Mexico, and it is not qualified to do business in Alabama. Competitive Edge does not maintain any offices or own any property in Alabama. The agency entered into an agreement with Tony Moore whereby it agreed to develop advertisements for Tony Moore's automobile dealership, Moore-GMC, and to buy air time on Alabama television stations in order to broadcast these advertisements. William Marefka testified in deposition that he had been employed by Competitive Edge as an account executive and was assigned to handle Moore's business. Marefka was employed at Competitive Edge's Atlanta office. He stated that he frequently met with Tony Moore in Huntsville or Decatur, Alabama in order to agree on a television budget and the type of television advertisements Moore wanted. The parties would also discuss time periods for the broadcast of particular advertisements. Marefka would often write a television script based on Moore-GMC's inventory for that particular period, and Moore would then approve or disapprove the script. When a final script was drafted it was then sent to Competitive Edge's studio in Albuquerque, New Mexico, where a videotape would be produced. Most of the film footage used was drawn from a footage library located in Albuquerque. Occasionally, road crews were sent out to film on the dealership lot, and this footage would then be sent to Albuquerque for processing. A media buyer in Competitive Edge's Atlanta office would then contact television station representatives to negotiate air time for the videotapes on behalf of Moore-GMC. Most of the negotiations with the Huntsville television stations took place over the telephone. After the videotapes and broadcast times received final approval by Moore-GMC, the videotapes would be mailed to Huntsville television stations for airing. Marefka testified that Moore-GMC still owed Competitive Edge $7,270.99 for the cost of producing and airing the commercials on three Huntsville television stations.
After the close of Competitive Edge's case, consisting of the above facts, Moore-GMC moved for a directed verdict on the ground that Competitive Edge was a foreign corporation not qualified to do business in Alabama, and, therefore, could not enforce any agreement between the parties. The trial court stated in response:
 "In the case at bar this [court] finds that the discussions with the Defendant were conducted by a representative of the Plaintiff in the State of Alabama, that certain parts of the production were accomplished in the State of Alabama, and the actual work to be performed was to be and was performed in the State of Alabama. . . . In this case any agreement was entered into in the State of Alabama from all that has been presented to me. . . .
 "This Court finds that the actual business that was being conducted between the parties in this case was conducted in the State of Alabama. The parent corporation or the corporation with which the Defendant did business, of course, was *Page 1244 
outside of the State. Therefore, they had to qualify to do business in the State to do business and it is stipulated between the parties or agreed and not controverted that the Plaintiff was not qualified to do business in this State.
 "Therefore, under the provisions of the applicable law, that is 10-2A-247 and 40-14-4 [and] the Constitution, Section 232, the contract is void and asserted to be so by the party against whom it is sought to be [enforced], and I presume from this motion that it is asserted to be void and the Court does so find and directs verdict in favor of the Defendant."
It has been held that a foreign corporation doing business in this state without qualifying cannot use our courts to enforce its contracts. Continental Telephone Corp. v. Weaver,410 F.2d 1196 (5th Cir. 1969). Alabama Const. art. XII, § 232, and §§ 10-2A-247 and 40-14-4, Code 1975, prohibit a nonqualified foreign corporation from enforcing a contract made in Alabama if it is doing business in Alabama. Where the contract is to be performed in Alabama, regardless of where entered into, and in the performance of the contract the foreign corporation must engage in business in this state, our courts refuse to aid the nonqualified corporation in the enforcement of such contract.Sanjay, Inc. v. Duncan Construction Co., 445 So.2d 876 (Ala. 1983). A nonqualified foreign corporation is not barred from enforcing its contracts, however, when it is engaged solely in interstate commerce. Kentucky Galvanizing Co. v. ContinentalCasualty Co., 335 So.2d 649 (Ala. 1976).
Competitive Edge claims that it was not doing business in Alabama but was engaged solely in interstate commerce, so that the laws of this state are not applicable. We disagree.
Our courts have held that transactions in Alabama by a nonqualified foreign corporation involving no more than a sale, transportation, and delivery of materials into this state are acts of interstate commerce to which the laws of Alabama are not applicable. Loudonville Milling Co. v. Davis, 251 Ala. 459,37 So.2d 659 (1948). Mere business solicitations and incidents relative to such solicitations do not constitute transaction of business by a foreign corporation within the state of Alabama for purposes of the statutory and constitutional provisions at issue in this case. Swicegood v. Century Factors, Inc.,280 Ala. 37, 189 So.2d 776 (1966).
Competitive Edge cites Swicegood v. Century Factors, Inc.,supra, which it contends is factually similar to the case at bar, to support its position that its activities involve solely interstate commerce. In Swicegood v. Century Factors, Inc.,supra, a nonqualified foreign corporation regularly sent a sales representative to Alabama to solicit sales of its radio jingles to Alabama customers. The orders for the jingles were filled out of state and then shipped into Alabama. The supreme court held that the foreign corporation was not transacting business in Alabama, and, therefore, was not required to qualify to do business in Alabama.
The facts in the instant case are distinguishable from the facts in Swicegood v. Century Factors, Inc., supra. Competitive Edge's contract with Moore-GMC involved more than the mere sale of a videotape, manufactured out of state and mailed to Moore-GMC. The contract also involved the negotiating for and procuring of air time from three Huntsville television stations. Thus, it is clear that Competitive Edge's performance of the contract required the exercise of both interstate and intrastate activities.
The proper analysis of a case in which the contract at issue involves the exercise of both interstate and intrastate activities is exemplified by that line of cases that has followed the United States Supreme Court's decision in Browningv. City of Waycross, 233 U.S. 16, 34 S.Ct. 578, 58 L.Ed. 828
(1914), and General Railway Signal Co. v. Virginia,246 U.S. 500, 38 S.Ct. 360, 62 L.Ed. 854 (1918). Under this analysis, one must separate the interstate and intrastate activities and then determine whether the main or primary purpose of *Page 1245 
the contract constitutes an interstate or intrastate activity. This analysis has been applied by several courts, including our own supreme court, to factual circumstances and issues analogous to those in the present case. See, e.g., Tad ScreenAdvertising, Inc. v. Oklahoma Tax Commission, 126 F.2d 544
(10th Cir. 1942); Tel-Pic Syndicate, Inc. v. Station WIBS,94 F. Supp. 888 (D.P.R. 1951); Alexander Film Co. v. State,253 Ala. 439, 44 So.2d 581 (1949); State v. Tad Screen AdvertisingCo., 199 Ark. 205, 133 S.W.2d 1 (1939); Ligon v. Alexander FilmCo., 55 S.W.2d 1030 (Tex. Comm'n App. 1932). For example, inLigon v. Alexander Film Co., supra, a nonqualified foreign corporation was not permitted to enforce its contract in Texas courts. The corporation, based in Colorado, was engaged in providing advertising services to local merchants in Texas. The corporation manufactured films at its Colorado studio, advertising the business of its Texas customers. The company then contracted with a theater to exhibit these advertising films on behalf of its Texas customers, during public performances conducted by the theater. The Texas court stated:
 "It is perfectly plain . . . that the contract between the film company and Ligon contemplated, as the main object of the company's entire undertaking, the public exhibition of the films in the theaters at Lubbock. The matter of publicly exhibiting the films was essentially intrastate business. . . . The matter of manufacturing and shipping the films was but incidental to the accomplishment of the essential purpose of the contract; namely, the advertising at Lubbock, the business of Ligon, by the use of the films."
In each of the other cases cited above, the court concluded that the contract at issue was not so related to interstate commerce as to preclude the state from exercising its police power to regulate the activity.
In Alexander Film Co. v. State, supra, the supreme court was asked to determine whether the activities of a foreign corporation subjected it to the license tax then prescribed by Title 51, Section 456, Alabama Code 1940, on one engaged in the business of bill posting or advertising by making displays in public places. The court found this question to be directly related to the question of "whether or not such foreign corporation is engaged in a particular activity within the State, which activity is the subject of controversy, and whether that activity is so related to interstate commerce as to be exempt from [the state's taxing and police power]."Accord, Tel-Pic Syndicate, Inc. v. Station WIBS, supra; Statev. Tad Screen Advertising Co., supra; Ligon v. Alexander FilmCo., supra. Thus, the controlling question in this case is whether the contract at issue is so related to interstate commerce as to be exempt from the requirements of Ala. Const. art. XII, § 232 and §§ 10-2A-247 and 40-14-4, Code 1975.
In Alexander Film Co. v. State, supra, the foreign corporation's business activities were described as follows:
 "`The defendant has a traveling representative who goes through the various states, including the State of Alabama. The representative contacts places of business in the various communities, and suggests the furnishing of a film to advertise the business of the particular customer. If the prospect desires film advertising, a written contract is entered into under the terms of which the customer agrees to pay for the rental of the film and the display space on the screen of the theatre in his community. The contract is sent to the home office in Colorado, and must be accepted by the home office before it becomes a binding contract. After the contract has been entered into, the representative calls on a theatre in that community to arrange for space and time on behalf of the customer for the showing of the film. A written contract is entered into between the theatre and Alexander Film Company, wherein the theatre agrees to show the film on behalf of the customer at a certain agreed rate per week. This contract must also be sent to the home office in *Page 1246 
Colorado for acceptance before it becomes binding.
 "`Thereafter, in accordance with the contract, the film is shipped from Colorado Springs direct to the theatre where it is used as a display on the screen of the theatre for the specified period of time and the film is then returned direct to Alexander Film Company, in Colorado Springs. . . .'"
In deciding that the foreign corporation was subject to the tax, the court relied upon two undisputed principles. First, even though an article has been transported in interstate commerce, it becomes subject to the state taxing and police power once it has arrived at its destination and is there being held for use or disposal. Alexander Film Co. v. State, supra.
Second, the employment of an independent contractor to perform the intrastate parts of a contract cannot insulate the foreign corporation responsible for the primary contract from regulation by the state's police power. Id.
Application of these principles to the facts in the present case can only lead to the conclusion that Competitive Edge has acted primarily in intrastate commerce by performing the contract for Moore-GMC. The videotaped commercial is simply a technologically advanced version of the film medium used inAlexander Film Co. v. State, supra, even as the local television broadcasts are the modern equivalent of public theater exhibitions.
As in Alexander Film Co., it is clear that the primary purpose of the contract between Competitive Edge and Moore-GMC was the service which was agreed to be rendered under it, i.e. the broadcasting of automobile advertisements in the local area. Competitive Edge's own representatives testified that its primary business is advertising on television. Any compensation to be received by Competitive Edge was contingent upon the airing of these advertisements. That this broadcast was completed by the local stations under an independent contractor relationship does not affect the intrastate nature of the contract. The only interstate part of this contract ended when the videotape completed its journey through the mails; the primary service of broadcasting an advertisement in the local area took place after this occurred. All of the cited authorities accept that the local screening and exhibition of an advertising film is essentially intrastate business. See,Alexander Film Co. v. State, supra; State v. Tad ScreenAdvertising Co., supra; Ligon v. Alexander Film Co., supra.
Because the primary purpose of the contract between it and Moore-GMC was intrastate in nature, Competitive Edge should have qualified to do business in Alabama before performing the service. The interstate activities performed by Competitive Edge, which were merely incidental to the performance of the primary service, cannot be used to insulate the intrastate activities from the police powers of this state. Browning v.City of Waycross, supra; Wallace Construction Co. v. IndustrialBoiler Co., 470 So.2d 1151 (Ala. 1985).
The decision of the trial court is affirmed.
AFFIRMED.
All the Judges concur.