CORNWALL & STEVENS SOUTHEAST, INC., and Cornwall & Stevens Co., Inc., Plaintiffs,

v.

Ralph M. STEWART, Defendant.

Civ. A. No. 94–A–1473–N.

United States District Court, M.D. Alabama, Northern Division.

June 16, 1995.

Terry A. Sides, Montgomery, AL, Sylvia K. Kochler, James A. Shuchart, John C. Amabile, Atlanta, GA, for plaintiffs.

H. Dean Mooty, Jr., Montgomery, AL, for defendant.

## *MEMORANDUM OPINION AND ORDER*

ALBRITTON, District Judge.

### INTRODUCTION

This cause is before the court on the Defendant's Motion for Partial Summary Judgment, filed on March 31, 1995. Plaintiff Cornwall & Stevens Southeast, Inc., a Georgia Corporation, ("Cornwall & Stevens"), brought this action to enforce the terms of a

1992 employment contract between the parties. Defendant, Ralph M. Stewart ("Stewart"), seeks summary judgment on what are essentially jurisdictional grounds. According to the defendant, the plaintiff is foreign corporation not qualified to do business in the State of Alabama, and as such is precluded from bringing suit in the courts of this state to enforce the contract. The defendant bases this assertion on the Alabama Constitution, Article XII, § 232, as well as the Alabama Code, § 10–2A–247, the so called "door closing" provisions. After the motion was filed, Cornwall & Stevens Co., Inc., a Tennessee Corporation and the parent of Cornwall & Stevens Southeast, Inc. was made an additional plaintiff by amendment to the complaint. Both sides have argued the motion as being applicable to both plaintiffs' and the court will consider the motion in the same way. For convenience, the plaintiffs will be referred to collectively as Cornwall & Stevens.

Plaintiffs do not dispute that they are not registered to do business in Alabama, however, they raise several arguments in opposition to the defendant's motion. The plaintiffs contend that they are exempt from the registration requirement by virtue of the fact that they are engaged in interstate commerce. According to the plaintiff, because of the interstate nature of its business, the Federal Constitution, specifically Article I, § 8, cl. 3 (the Commerce Clause), prevents Alabama from prohibiting plaintiffs from using the state courts. Additionally, the plaintiffs contend that the statute relied upon by the defendant has recently been repealed and a new statute adopted in its place. 1994 Ala. Acts 245, § 3; Alabama Code § 10–2B–15.02. The plaintiffs assert that the new statute permits this court to stay these proceedings to allow Cornwall & Stevens to come into compliance with the registration requirements, if registration is legally required.

The court finds that the plaintiffs are in fact engaged in interstate commerce and that therefore the Federal Constitution prevents application of Article XII, § 232 of the Alabama Constitution, and either § 10–2A–247 or § 10–2B–15.02 of the Alabama Code. Because the court has determined that the plaintiffs are engaged in interstate commerce, and that door closing provisions of Alabama law are precluded by the Commerce Clause, the court does not reach the plaintiffs' argument based on the recent changes regarding § 10–2A–247.

## FACTS

Prior to April 26, 1994, the defendant was employed by the plaintiffs, Cornwall & Stevens. Defendant ceased working for the plaintiffs on April 26, and began working for a competitor of the plaintiffs on May 1, 1994. The plaintiffs by this suit seek to enforce the terms of the employment agreement with the defendant, which includes a covenant not to compete.[1]

Under the terms of the contract, Stewart, as the "employee," agreed not to "compete in the Insurance Industry Area with Employer [Cornwall & Stevens] or any affiliate of Employer for a period of two (2) years." The "Insurance Industry Area" is previously defined as those states in which Cornwall & Stevens or any of its affiliates do business. The Insurance Industry Area lists a total of eighteen states, including most of the Southeast region of the United States.[2]

According to the plaintiff, they are insurance companies operating in approximately fifteen states throughout the United States. Part of the plaintiffs' business includes insurance risks associated with baled cotton. This is the area of plaintiffs' business that defendant was hired to work in, and it is the area in which the defendant works for his current employer.

Affidavits before the court show that plaintiffs' business clearly involved the sale of insurance policies in many different states. Additionally, and more important for the determination of this motion, affidavits before

---

**1.** Plaintiffs also assert tort claims for damages which are not involved in this motion.

**2.** The states listed are: Arizona, Arkansas, Alabama, California (southern half), Florida, Georgia, Kentucky, Mississippi, Missouri (southeast portion), New Jersey, New Mexico, North Carolina, Oklahoma, South Carolina, Tennessee, Texas, Virginia, and West Virginia.

the court show that the defendant himself was hired in order to service and sell policies in Alabama, Georgia and Florida.

## STANDARD

■ Under *Fed.R.Civ.P.* 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. at 2553. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–23, 106 S.Ct. at 2552–53.

■ Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56(c).

## ANALYSIS

■ The Alabama Constitution § 232 requires all foreign corporations doing business in Alabama to file with the secretary of state. To promote compliance with this provision, the legislature has barred non-qualifying foreign corporations from enforcing its contracts in the state court system. Alabama Business Corporation Act, § 10–2A–247 *Code of Alabama* 1975. The relevant portion of this statute reads:

> All contracts or agreements made or entered into in this state by foreign corporations which have not obtained a certificate of authority to transact business in this state shall be held void at the action of such foreign corporation or any person claiming through or under such foreign corporation by virtue of said void contract or agreement.

However, pursuant to the Commerce Clause, U.S. Const., Article I, § 8, cl. 3, the Alabama courts have consistently recognized an exception to this preclusion for non-registrants engaged in interstate commerce. *See, e.g., Wallace Constr. Co. v. Industrial Boiler Co.*, 470 So.2d 1151 (Ala.1985); *North Alabama Marine, Inc. v. Sea Ray Boats, Inc.*, 533 So.2d 598 (Ala.1988); *Competitive Edge, Inc. v. Tony Moore Buick–GMC, Inc.*, 490 So.2d 1242 (Ala.Civ.App.1986). Plaintiffs contend that, as businesses incorporated in Tennessee and Georgia with operations involving at least fifteen states throughout the country, they are conducting interstate commerce and are therefore allowed to pursue this action in the Alabama courts.

The defendant contends that he was employed to solicit, negotiate, and write policies for Alabama cotton gins and warehouses. Defendant asserts that his activity was therefore intrastate in nature and that the plaintiffs cannot use activities outside those of the defendant to bring this action under the interstate commerce exception. Defendant relies on the Supreme Court's analysis of intrastate commerce in *Browning v. Waycross,*

233 U.S. 16, 34 S.Ct. 578, 58 L.Ed. 828 (1913), to conclude that his employment contract was primarily intrastate. According to *Browning*, activities which are of a strictly local character and are wholly separate from interstate commerce fall under state regulatory power. *Browning*, 233 U.S. at 22, 34 S.Ct. at 580.

Defendant also cites *Wallace*, which held that the installation activities performed instate by a foreign manufacturer were only "necessary and incidental to the interstate sale" and not sufficient to bring the foreign company within the state's control. *Wallace*, 470 So.2d at 1155. Defendant analogizes the holding in *Wallace* to illustrate a parallel proposition that purely intrastate activities are not transformed by incidental interstate contacts. Defendant also cites the analysis used in *Competitive Edge*. In that case, the court held that a contract primarily aimed at intrastate activity cannot be protected from state regulation by a mere gloss of interstate activity on the company's part. *Competitive Edge*, 490 So.2d at 1246. As discussed below, the defendant's argument fails on all levels. The plaintiffs in this case are engaged in interstate commerce. Additionally, there is clearly an interstate component to the contact between the plaintiffs and the defendant in this case. Finally, it appears that the defendant was hired to service contracts in more than one state, thus making the nature of the defendants' own activity interstate.

The court begins by noting that the Supreme Court has ruled categorically that insurance is interstate commerce. The Supreme Court originally held that insurance contracts were not transactions in interstate commerce and not subject to Congressional regulation, leaving the states to shoulder the burden of regulating the industry. *Paul v. Virginia* 75 U.S. 168, 19 L.Ed. 357 (1868). However, the Court reversed itself in *United States v. SouthEastern Underwriters Association*, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944). In applying the Sherman Antitrust Act to insurance companies, the Court recognized Congressional power to regulate insurance transactions through the Commerce Clause. "No commercial enterprise of any kind which conducts its activities across state lines has been held to be wholly beyond the regulatory power of Congress under the Commerce Clause. We cannot make an exception of the business of insurance." *Southeastern Underwriters*, 322 U.S. at 553, 64 S.Ct. at 1173.

The Alabama Supreme Court acknowledged this ruling in *Glass v. Prudential Insurance Co. of America*, 246 Ala. 579, 22 So.2d 13 (1945), stating, "Insurance companies which conduct a substantial part of their business transactions across state lines are engaged in commerce among the several states and subject to regulation by Congress under the Commerce Clause." *Glass*, 22 So.2d at 14. Plaintiffs also cite cases involving the McCarran–Ferguson Act, the Congressional response to *Southeastern*. The McCarran–Ferguson Act allowed states to continue their regulatory schemes unless Congress preempts with an act specifically related to the business of insurance. *Barnett Bank of Marion County, N.A. v. Gallagher*, 43 F.3d 631 (11th Cir.1995); *In re Worker's Compensation Ins. Antitrust Litig.*, 574 F.Supp. 525 (D.Minn.1983). These cases are premised on the recognition of insurance as interstate commerce.

Additionally, it appears as though the plaintiffs' business and their relationships with the defendant in this particular case are interstate in nature. The Alabama Court's analysis in *Sea Ray* is helpful in examining this matter. *Sea Ray* involved a suit by a boat manufacturer that was a foreign corporation. The manufacturer brought suit to enforce a contract entered into with one of its dealers in Alabama. The dealer asserted the Alabama door closing provisions as a defense, based on the contention that the nature of the defendant dealer's business was intrastate. In applying the interstate analysis, the court looked to the nature of the plaintiff foreign corporation's business and its activities. The court held that even where the defendant dealer was engaged in intrastate activity, the plaintiff manufacturer was engaged in interstate activity only and thus was exempt from the Alabama Business Corporation Act. *Sea Ray*, 533 So.2d at 601. In the case at hand, plaintiffs and defendant

were involved in a similar agency relationship. Defendant's activities in soliciting and servicing Alabama business were his responsibility and were unrelated to the plaintiff's primary conduct. Plaintiffs were obligated only to supply the indemnity produced by defendant's sales. Defendant's activities as an agent of the plaintiffs were therefore analogous to those in *Sea Ray* and as such the business engaged in by the plaintiffs in this case is interstate.

The court has also examined the nature of the contract between the parties in this case. In this case, the contract at issue is between a foreign corporation and a resident of Alabama. All contact and dealings between the plaintiffs and the defendant appear to have been interstate in nature. Plaintiffs maintained no presence in Alabama other than employing the defendant. Presumably as the defendant sold and serviced policies, he was in contact with the plaintiffs' offices in a different state. It would appear then that there was necessarily interstate activity between the plaintiff corporations, presumably at the home offices, and the defendant as a representative in Alabama. Thus, the dealings between the parties were of an interstate nature.

Defendant argues, though, that the nature of his employment with the plaintiffs is intrastate, and that this particular contract concerns only intrastate activity. *Competitive Edge* found the controlling question for determining the interstate character of an activity to be "whether the contract at issue is so related to interstate commerce as to be exempt from the requirements of Ala. Const. Art. XII, § 232 and §§ 10–2A–247 and 40–14–4, Code 1975." *Competitive Edge*, 490 So.2d at 1245. The court now examines the defendant's activities in relation to the clients he serviced and the duties he performed pursuant to his contract.

Although the primary purpose of the contract here was obviously to employ Stewart to write policies for the plaintiff, the geographical scope of this employment is disputed. Defendant claims he was employed primarily to service Alabama customers and policies. The plaintiffs claim that Stewart's contract extended to other states. The court

has before it an affidavit from Tony Smith, President of Cornwall & Stevens. According to Smith, the defendant was hired to sell and service contracts in Georgia and Florida as well as Alabama. Smith Aff. at ¶ 7. These activities obviously expand the scope of Stewart's employment beyond merely intrastate trade. Because the facts in a Motion for Summary Judgment are to be construed in favor of the party opposing the motion, the employment contract should be construed to include more states than Alabama alone. Thus, the primary character of Stewart's activities is also interstate in nature.

Therefore, the court finds that this action falls within the interstate commerce exception to the Alabama door closing provisions. The nature of the plaintiffs' business, insurance sales across state lines, is interstate. Additionally, the plaintiff corporations in this case were engaged in writing and servicing insurance policies in many different states, including Alabama. Furthermore, the relationship between the parties to the contract was interstate in nature. Finally, intended activities of the defendant himself in selling and servicing policies do not appear to have been limited to this state alone, in that it appears that it was intended for the defendant to sell and service insurance contracts not only within Alabama, but also in Georgia and Florida.

## CONCLUSION

For the reasons set forth above, the court finds that Defendant's Motion for Partial Summary Judgment is due to be, and is hereby DENIED.