700 So.2d 1363 (1997)
NATIONAL AMERICAN INSURANCE COMPANY
v.
BOH BROTHERS CONSTRUCTION COMPANY, INC.
1960173.
Supreme Court of Alabama.
July 25, 1997.
*1364 James P. Green and Thomas H. Nolan, Jr., of Brown, Hudgens, P.C., Mobile, for appellant.
Douglas L. Brown and Clifford C. Brady of Armbrecht, Jackson, DeMouy, Crowe, Holmes & Reeves, L.L.C., Mobile, for appellee.
MADDOX, Justice.
The central legal issue presented in this case is whether the Alabama principle that a foreign corporation cannot sue on a contract claim if it has not qualified to do business in this Statecommonly referred to as Alabama's "door-closing statute," Ala.Code 1975, § 10-2A-247would bar a surety, which had qualified to do business in the state, from maintaining an action in which it seeks to establish its right of equitable subrogation to recover for claims it paid as required by a payment and performance bond.
This case involves a dispute over a portion of more than a half million dollars awarded by the State of Alabama Highway Department because of delay damages incurred by certain subcontractors and suppliers on a highway construction project for improvements to a section of Interstate Highway I-165 in Mobile, Alabama.
Boh Brothers Construction Company ("Boh") had a contract with the Highway Department to construct a section of I-165 in Mobile. Pursuant to this contract, Boh agreed "to furnish and deliver all the material and to do and perform all the work and labor required to be furnished and delivered" in the performance of the project. Boh entered into a subcontract with Mike Mitchell & Associates, Ltd. ("MMA"). MMA agreed to perform certain treatment and remediation work on the I-165 project. At the time, MMA was a foreign corporation that had not qualified with the Alabama secretary of state to do business in Alabama.
As part of its agreement with MMA, Boh required MMA to obtain a subcontract payment bond and subcontract performance bond. National American Insurance Company ("National American") issued a subcontract performance bond and a subcontract payment bond in favor of Boh as obligee. MMA was named as principal for the work MMA was to perform on the I-165 project.
MMA proceeded with work on the project and entered into a subcontract with Williams Environmental Services, Inc. ("Williams"), by which Williams was to perform, among other things, the hydrocarbon remediation of the soil. During the course of its work on the *1365 project, Williams discovered pesticide contamination on the job site. As a result of the discovery of the pesticides, the Alabama Highway Department instructed all parties to stop work on the job site until it was determined how to remedy the pesticide contamination. The discovery of the pesticides caused a substantial delay on the project, and this delay generated claims by Boh, MMA, Williams, and others working on the project. In addition to the claims resulting from the delay, several laborers, materialmen, and suppliers of MMA asserted claims against MMA and National American resulting from MMA's nonpayment of these laborers, materialmen, and suppliers. These laborers, materialmen, and suppliers also notified Boh of their claims and their intent to assert a claim against Boh and its surety.
Pursuant to its contractual obligation with Boh, National American, as surety for MMA, admittedly paid the following claims: (1) Aaron Oil Company, Inc., $58,442.52; (2) Oil Recovery Services, Inc., $14,841.12; and (3) Trax, Inc., $12,886.28. Each of these claimants executed assignments to National American of any rights it might have had to proceed against others.
After the work on the project had been halted, MMA, through Boh, asserted a delay claim with the Alabama Highway Department for delay costs and other claims that it alleged arose out of its subcontract with Boh. The delay claim consisted of MMA's delay costs, delay costs of Williams and other subcontractors, as well as other costs. The claim was presented to the Alabama Highway Department claims committee, and, after exhausting all its administrative appeal processes, Boh accepted the amount of $545,527.44 from the Alabama Highway Department as settlement of the claim. This is the fund that has created the legal dispute involved in this appeal.
MMA, National American's principal, initially sued in the United States District Court for the Southern District of Alabama alleging breach of contract, relating to claims arising out of its subcontract with Boh. That court entered a summary judgment in favor of Boh on the ground that MMA was a foreign corporation not qualified to do business in Alabama, and, therefore, could not enforce its contract with Boh. Mike Mitchell & Associates, Ltd. v. Boh Bros. Constr. Co. (CV-94-0099, S.D. Ala. June 14, 1994). MMA did not appeal that decision.
Williams, one of MMA's subcontractors, filed this action in the Circuit Court of Mobile County, against MMA, National American, Boh, and Fidelity & Deposit Company of Maryland ("F & D"), Boh Brothers' surety, asserting claims for payment for work and labor performed on the project. Boh subsequently entered into a pro tanto settlement agreement with Williams regarding Williams's claim against Boh.
MMA, although having lost in its action against Boh in the federal court, asserted a cross-claim against Boh, alleging both tort and contract claims arising out of its subcontract with Boh. National American also filed a cross-claim against Boh. MMA's claim against Boh also included allegations involving the claim for delay damages that is the subject of National American's cross-claim. Boh moved for a summary judgment on MMA's cross-claim in this action on the same ground that it had asserted in the federal action; the trial court entered a summary judgment in favor of Boh against MMA, holding that MMA's contract with Boh was unenforceable because of MMA's failure to qualify to do business in Alabama, just as the federal court had held.
National American's cross-claim against Boh is the subject of this appeal. In its cross-claim, National American claimed that it was equitably subrogated to funds due from Boh to MMA under MMA's subcontract with Boh, and argued that it should be permitted to maintain its claim of equitable subrogation, even though its principal, whose obligations it had paid, had not qualified to do business in Alabama. It sought as damages $86,169.92, plus $176,000 paid by it to Williams. National American, filing copies of the release and subrogation agreements executed by the subcontractors and suppliers that it had paid under the terms of its bond, moved for a summary judgment on its cross-claim. Boh responded to the motion by agreeing that there were no material issues of fact to decide and that only a question of *1366 law was presented. The trial court denied National American's motion for summary judgment and entered a judgment in favor of Boh on National American's cross-claim, holding that National American could not maintain its cross-claim against Boh, because MMA, as the principal on the payment and performance bonds, was a foreign corporation that had not qualified to do business in Alabama, even though National American, as surety, was qualified to do business in Alabama, and even though Boh was the obligee on the bond that Boh required MMA to execute, and even though National American had paid claims on behalf of its principal, MMA.
National American filed a motion to alter, amend, or vacate the judgment, raising several new issues. The trial court denied the motion and this appeal ensued.
National American's argument, summarized, is that Boh made a claim with the Highway Department and recovered $545,527.44; that most of that money was earned by subcontractors and suppliers of MMA, its principal; that MMA had failed to pay its subcontractors and suppliers; and that National American had made payments on its behalf. National American contends that if it had not paid those debts of MMA, then Boh, or its surety, F & D, would have had to make those payments, and that those claimants had a right to assert equitable liens and a constructive trust on any funds received by Boh from the Highway Department in connection with the project. In short, National American contends that it does not stand in the shoes of MMA, but is a subrogee of the subcontractors and suppliers that it paid under the bond that it executed with Boh as the obligee.
Boh's argument, summarized, is that National American cannot be subrogated to the proceeds Boh received from the Highway Department as delay damages, because, Boh says, "it has been determined by two courts that MMA has no claim against Boh and that its subcontract with Boh is unenforceable"; and that "[s]ince National American seeks to be subrogated to the proceeds of MMA's subcontract with Boh and MMA's subcontract with Boh has been determined to be unenforceable, i.e., there are no contract proceeds, then there are no funds to which National American can be subrogated." The substance of Boh's argument is based upon Alabama's door-closing statute. In fact, Boh argues that "[i]f National American is allowed to proceed against Boh under its theory of `equitable subrogation,' the public policy of Alabama's qualification statutes and Constitution will be circumvented."
Based on our reading of the briefs, our understanding of the oral arguments in this case, and the applicable law, we agree with National American's argument. We reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.
Suretyship is a three-party relationship among a principal, its surety, and the obligee to whom the principal and surety are jointly and severally bound for performance. Balboa Insurance Co. v. United States, 775 F.2d 1158, 1160 (Fed.Cir.1985), citing United States v. United States Fidelity & Guaranty Co., 236 U.S. 512, 35 S.Ct. 298, 59 L.Ed. 696 (1915). In Maryland Casualty Co. v. Cunningham, 234 Ala. 80, 83, 173 So. 506, 509 (1937), this Court said:
"[T]he salutary principle still prevails that the contract of suretyship is not that the obligee will see that the principal performs its conditions, but that the surety will see that he performs them (Alabama Fidelity & Casualty Co. v. Alabama Fuel & Iron Co., 190 Ala. 397, 67 So. 318 (1914))...."
In Fidelity & Casualty Co. of New York v. Central Bank of Birmingham, 409 So.2d 788, 790 (Ala.1982), this Court stated that "[t]he surety's right to equitable subrogation exists whether a surety steps in and physically completes the contract or whether it merely pays the laborers and materialmen under that contract." In Maryland Casualty Co. v. Dupree, 223 Ala. 420, 423, 136 So. 811, 814 (Ala.1931), the Court held that the surety on a bond issued on a public contract "has an equity akin to the doctrine of subrogation."
Under the facts of this case, two suretyships are important. First, Boh tendered to the Highway Department statutory payment, as required by § 39-1-1(a), Ala.Code *1367 1975. The performance done by Boh and its surety, F & D, was to complete the construction contract between Boh and the Department. The payment bond required Boh, and F & D, to pay all those third parties who supplied labor, materials, services, or equipment for the project, whether at Boh's instance or that of one of Boh's subcontractors. Second, Boh subcontracted part of its construction contract to MMA and required MMA to obtain payment and performance bonds, which National American issued, that required MMA to complete its subcontract with Boh, including the payment of subcontractors and suppliers for any labor, materials, services, or supplies furnished at MMA's direction in connection with the project. Because of the two suretyship relationships, it is our opinion that an unpaid subcontractor or supplier of MMA could pursue claims against Boh, or its surety, and could pursue claims against MMA and its surety, which is what Williams did in this case.
In view of the fact that the highway project experienced delays that were not shown to be the fault of MMA or its subcontractors or suppliers, and in view of the fact that the Highway Department awarded $545,527.44 to Boh and that Boh normally would have been required to pass that award down through its subcontract with MMA to those subcontractors and suppliers who suffered delay damage, Boh, in equity and good conscience, should not be permitted to use MMA's failure to qualify to do business in Alabama to prevent recovery by one who has paid claimants pursuant to the terms of the suretyship. Furthermore, National American has obtained assignments of any rights that those who were paid might have had to proceed against others.
There is another reason why we believe the trial court erred in applying Alabama's door-closing statute in this casethe Interstate Commerce Clause of the Federal Constitution prohibits the application of that door-closing statute in this case. In Cornwall & Stevens Southeast, Inc. v. Stewart, 887 F.Supp. 1490 (M.D.Ala.1995), a Georgia corporation and its parent corporation, a Tennessee corporation, sued their former employee to enforce a covenant not to compete that appeared in an employment contract. The employee moved for a partial summary judgment. The Court held that, although the two corporations were not registered to do business in Alabama, the corporations were engaged in interstate commerce and, therefore, the Commerce Clause prevented the application of Alabama's door-closing provisions. In Cornwall & Stevens, the plaintiffs contended that they were exempt from the registration requirement by virtue of the fact that they were engaged in interstate commerce, arguing that the Federal Constitution, specifically Art. I, § 8, cl. 3 (the Commerce Clause), prevented Alabama from prohibiting plaintiffs from using the state courts. Additionally, the plaintiffs noted that the statute relied upon by the defendant had recently been repealed and a new statute adopted in its place. 1994 Ala. Acts, Act. No. 94-245, § 3; Ala.Code 1975, § 10-2B-15.02. We note the same. In Cornwall & Stevens, the court found that the plaintiffs were in fact engaged in interstate commerce, and it held, therefore, that the Federal Constitution barred the application of Article XII, § 232, of the Alabama Constitution, and either § 10-2A-247 or § 10-2B-15.02, Ala. Code 1975. The court said: "Because the court has determined that the plaintiffs are engaged in interstate commerce, and that [the] door closing provisions of Alabama law are precluded by the Commerce Clause, the court does not reach the plaintiffs' argument based on the recent changes regarding § 10-2A-247."[1] 887 F.Supp. at 1491.
*1368 National American raises other issues on this appeal,[2] but we find it unnecessary to address them, in view of our holding that the trial court erred in entering the summary judgment against National American and that National American is, in fact, entitled to subrogation rights.
Based on the foregoing, the judgment is reversed and the case is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and SHORES, HOUSTON, and SEE, JJ., concur.
COOK, J., concurs in the result.
KENNEDY, J., dissents.
COOK, Justice (concurring in the result).
I concur in the Court's holding that the summary judgment was improper. I write specially, however, to point out, in Part I of this special writing, the rationale on which I base my concurrence and to note specifically in Part II my disagreement with that portion of the opinion addressing the constitutionality of Ala.Code 1975, § 10-2A-247, the "doorclosing" statute.

I.
The trial court entered a summary judgment in favor of Boh Brothers Construction Company ("Boh"), thereby denying National American Insurance Company ("National American")the surety under a contract with Mike Mitchell & Associates, Ltd. ("MMA")the right to be reimbursed for payments National American made under the surety contract to creditors of MMA upon MMA's default. It held that National American was not entitled to subrogationbecause MMA had not qualified to do business in Alabama, as required by Ala.Code 1975, § 10-2A-247, the "door-closing statute," and, consequently, could not itself have enforced its contracts in our courts.
The trial court, however, appears to have overlooked Ala.Code 1975, § 8-3-2, which provides:
"A surety [National American] who has paid his principal's debt, [MMA's debt] is entitled to a transfer of the original and collateral security which the creditor holds; he has all the rights to realize thereon and to reimburse himself to the same extent as the creditor might have done before the surety paid him, whether paid before or after judgment; and he shall be substituted for the creditor [MMA's subcontractors, materialmen, or suppliers] and subrogated to all his rights and remedies; in effect, he shall be a purchaser of the debt and all its incidents."

(Emphasis added.)
Section 8-3-2 is part of Chapter Three, "Suretyship," §§ 8-3-1 to -42; Chapter Three, in turn, constitutes a portion of Title Eight, "Commercial Law and Consumer Protection." Section 8-3-2 expressly authorizes National American to be subrogated to the claims of MMA's creditors, namely, (1) Williams Environmental Services, Inc.; (2) Aaron Oil Company; (3) Oil Recovery Services; and (4) Trax, Inc.; MMA's these were "subcontractors, materialmen, or suppliers," whose claims against MMA in the amount of $262,169.92, National American paid. The Court's opinion correctly points out that MMA's creditors could have pursued their claims against Boh or Boh's surety, Fidelity & Deposit Company of Maryland ("F & D"). Thus, National American, having authority, pursuant to § 8-3-2, to be subrogated to the *1369 rights of MMA's creditors, can also prosecute an action against Boh or F & D.
Nothing in Chapter Three of Title Eight suggests that the rights of a surety are in any manner restricted or limited by the provisions of § 10-2A-247. On the contrary, it is a fundamental rule of statutory construction that the general is limited by the specific. The specific statute in this case is § 8-3-2 and the other applicable provisions of Title Eight, Chapter Three, dealing with suretyship. The general section is, of course, the door-closing statute. Thus, it is unnecessary to base the holding in this case on general equitable principles. To the extent there is a conflict between these provisions, the more specific, namely, § 8-3-2, prevails, authorizing the result sought by National American.

II.
Because the Court holds as it does, it is clearly unnecessary to reach the question whether § 10-2A-247 implicates United States Const. art. I, § 8, cl. 3, the "Commerce Clause." I think the Court should not address that issue; therefore, I do not agree with the opinion to the extent it holds that § 10-2A-247 violates the Commerce Clause.
NOTES
[1] Section 10-2A-247, Ala.Code 1975, was repealed by Ala. Acts 1994, No. 94-245, p. 457, § 3, effective January 1, 1995. Act No. 94-245 repealed Chapter 2A relating to business corporations and replaced that chapter with Chapter 2B. Portions of Chapter 2B were subsequently repealed, and new provisions added by Ala. Acts 1995, Act No. 95-663, p. 1374, § 3, effective August 1, 1995. The current statute, § 10-2B-15.02(a), states:

"A foreign corporation transacting business in this state without a certificate of authority or without complying with Sections 40-14-1 to 40-14-3, inclusive, 40-14-21, or 40-14-41, may not maintain a proceeding in this state without a certificate of authority [sic]. All contracts or agreements made or entered into in this state by foreign corporations prior to obtaining a certificate of authority to transact business in this state shall be held void at the action of the foreign corporation or any person claiming through or under the foreign corporation by virtue of the contract or agreement; but nothing in this section shall abrogate the equitable rule that he who seeks equity must do equity."
[2] National American raised the issue whether Alabama's door-closing statute, to the extent it might be applied to bar the subrogation claims of a surety, violates the Contracts Clause of Article I, § 10, of the Constitution of the United States, and Article I, § 22, and Article IV, § 95, of the Alabama Constitution of 1901; and the issue whether Alabama's door-closing statute violates the Due Process Clause of the Constitution of the United States and §§ 6, 13, and 22 of Article I of the Alabama Constitution of 1901 and the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States and §§ 1, 6, and 22 of the Alabama Constitution of 1901.