735 So.2d 454 (1999)
RYAN'S FAMILY STEAK HOUSES, INC., et al.
v.
Tammy REGELIN et al.
1980186.
Supreme Court of Alabama.
April 30, 1999.
*455 Stephen F. Fisher of Jackson, Lewis, Schnitzler & Krupman, Greenville, SC; and Finis St.John of St.John & St.John, Cullman, for appellants.
Gregory A. Nicholas and William D. Sulzby, Jr., Cullman, for appellees.
HOUSTON, Justice.
Ryan's Family Steak Houses, Inc., and two of its managers, Randy Mullins and Scott Moats, are defendants in an action pending in the Cullman Circuit Court. (Hereinafter the defendants are referred to collectively as "Ryan's.") They appeal from an order denying their motion to compel arbitration. An appeal is the generally accepted method of review when a trial court denies a motion to compel arbitration. Nissan Motor Acceptance Corp. v. Ross, 703 So.2d 324 (Ala.1997). We reverse and remand.
Tammy Regelin, Lisa Vandergrift, Paula Price, Tina Jones, Windi Self, and Brandi Hunt, all of them employees of Ryan's, brought this action against Ryan's, seeking money damages for invasion of privacy, the tort of outrage, assault and battery, and negligent training and supervision; all the claims arose from sexually inappropriate conduct they say occurred in the workplace. Ryan's moved to dismiss or, in the alternative, to compel arbitration, based upon arbitration agreements that were executed by each of the plaintiffs when they were hired by Ryan's. The plaintiffs filed an amended complaint naming Employment Dispute Services, Inc. ("EDSI"), as a defendant; seeking damages for fraud in the inducement; and seeking to reform their contracts of employment. After a hearing on the motion to dismiss or to compel arbitration, the trial court denied the motion.
Each of the plaintiffs signed an application for employment that contained the following statement at the top:
"THE ENTIRE APPLICATION FORM MUST BE COMPLETED AS WELL AS THE ATTACHED ARBITRATION AGREEMENT PRIOR TO BEING CONSIDERED FOR HIRE!"
Each of the plaintiffs, by signing the application, agreed to arbitrate employment-related disputes; the application they signed had attached to it a separate document (which they also signed) that contained the following provision:
"Your potential Employer (`signatory company' or `Company') has entered into an agreement with Employment Dispute Services, Inc. (EDSI) to arbitrate and resolve any and all employment-related disputes between the Company's employees (and job applicants) and the Company. The following Agreement between You and EDS is a `selection of forum' agreement by which you agree that employment-related disputes between You and the Company shall be resolved through arbitration. Any arbitration matter shall be heard and decided under the provisions and the authority of the Federal Arbitration Act, 9 USC sec. 1, as applicable.

*456 "The purpose of this agreement is to provide You and the Company a forum in which claims or disputes with the Company and any other signatories may be resolved by arbitration rather than litigation. This Agreement does not restrict you from filing a claim or charge with any state or federal agency, for example, Equal Employment Opportunity Commission, state unemployment agency, state workers' compensation commission, where applicable. Rather, the Agreement applies only to State or Federal court proceedings.
". . . .
"1. Any employment-related dispute between the Company, Me, and/or other signatories which would otherwise be brought in State or Federal court shall be brought ONLY in the EDS arbitration forum and under EDS Rules and Procedures, as modified or amended from time to time. Other signatories to the same Agreement with EDS may be, for example, supervisors, managers, and agents of the Company.
"2. In consideration of the agreement by EDS to provide an arbitration forum, Rules and Procedures, and a hearing and decision based upon any claim or dispute I (employee/job applicant) may file or defend, I understand and agree to the following:
"A. Except as to claims or charges actually handled within a State or Federal agency, any and all disputes I may have with the Company, or that Company, its supervisors, managers or other agents may have with Me which would otherwise be decided in court, shall be resolved only through arbitration in the EDS forum and NOT THROUGH LITIGATION IN STATE OR FEDERAL COURT.
"B. The decision of EDS arbitration panel is final and binding on all parties. There is no appeal by any party on the merits of the dispute either to State or Federal court.
"C. This agreement is with EDS, not the Company, and is not, nor is it intended to be, an employment contract or any part of an employment contract. This agreement does not affect or alter My `at will' employment relationship with the Company.
"D. The Company and any other successor or assign, its signatory supervisors, managers, and other agents, are `third party beneficiary' of My agreement with EDS, and I am a `third party beneficiary' of others' agreements with EDS. A `third party beneficiary' is someone who benefits legally from a contract between two other parties.
"E. I absolutely must use the EDS forum for any and all employment-related disputes and/or claims and/or related tort claims I may have against the Company and all other signatories of this agreement which would otherwise be brought in court, even if the Agreement has been terminated since the date of the claim...."
Ryan's is a South Carolina-based multistate restaurant chain; it purchases food products, advertising, and many other products and services from vendors throughout the United States. (Affidavit, James Randolph Hart, vice president for human resources for Ryan's, filed in support of the motion to compel arbitration.) The plaintiffs were at-will employees of Ryan's at one of its restaurants in Alabama, where Ryan's does business pursuant to Ala.Code 1975, § 10-3A-170. Clearly, the operation of Ryan's was commerce in fact, because it involved a multistate company that obtained, from outside Alabama, supplies to achieve its business purposes. Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995).
"A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, *457 irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
9 U.S.C. § 2.
On July 1, 1998, the trial court set the motion to dismiss or to compel arbitration for a hearing on August 21, 1998. There is no record of the hearing before this Court. The case action summary, which is before us, does show that on August 24, 1998, "after hearing," the trial judge denied the motion to dismiss or to compel arbitration.
The plaintiffs' brief contains the following in its "statement of the case":
"On August 21, 1998, a hearing was held on Ryan's Motion to Dismiss and Petition to Compel Arbitration. No evidence was presented at the hearing."
The following statement appears in the reply brief filed by Ryan's:
"Plaintiffs have at no time offered affidavits, testimony or any type of evidence to support their alleged contract defenses. All parties agree that no evidence was presented at the brief hearing conducted by the circuit court at which the court heard oral argument on Ryan's... motion to dismiss and petition to compel arbitration."
Therefore, when the trial court denied arbitration, the only evidence before the court was evidence that would have supported an order compelling arbitration: 1) Hart's affidavit; 2) the signed applications for employment; and 3) the arbitration forms signed by each employee.
This Court has written:
"`The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and the existence of an arbitrable dispute. In order to prevail on an assertion of arbitrability, the moving party is required to produce some evidence which tends to establish its claim.'"
Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260, 1265 (Ala.1995). (Citation omitted.) "[A]fter a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question." Jim Burke, 674 So.2d at 1265 n. 1. The plaintiffs did not do this.
The trial court should have compelled arbitration. Therefore, the order denying arbitration is reversed, and the cause is remanded for the trial court to grant the motion to compel arbitration.[1]
REVERSED AND REMANDED.
*458 HOOPER, C.J., and MADDOX, SEE, LYONS, and BROWN, JJ., concur.
KENNEDY, COOK, and JOHNSTONE, JJ., dissent.
COOK, Justice (dissenting).
I join in Justice Johnstone's dissent inasmuch as it concludes that EDSI is a foreign corporation that was not licensed in Alabama at the time the contracts in question were entered into, and, therefore, that the contracts, purporting to provide for arbitration of these disputes, are void and unenforceable. Present in this case is the principle, ably addressed by Justice Johnstone, that the order of the trial court is due to be affirmed if it is right for any reason, including a reason not expressed by the trial court in the record. Nonetheless, barring an affirmance, no greater consequence should befall this case than for it to be remanded for the trial court to determine whether the present state of the record, regarding EDSI's status, is factual.
I write further to discuss National American Insurance Co. v. Boh Brothers Construction Co., 700 So.2d 1363 (Ala. 1997), and Boh Brothers Construction Co. v. Nelson, 730 So.2d 132 (Ala.1999); specifically, to point out that my proposed resolution of this case is not inconsistent with those two opinions. More specifically, those cases do not stand for the proposition that Ala.Code 1975, § 10-2B-15.02(a), the "door closing statute," is unconstitutional as violating the Commerce Clause, United States Const. art. I, § 8, cl. 3. Indeed, neither this Courtnor any other courthas ever held § 10-2B-15.02(a) to be unconstitutional, or its application barred by the Commerce Clause.
National American dealt with the right of National American Insurance Company ("National American")a surety under a contract with Mike Mitchell & Associates, Ltd. ("MMA")to be reimbursed for payments it had made under the surety contract to creditors of, and upon the default of, MMA. 700 So.2d at 1364-65. The trial court had held that National American was not entitled to subrogation, on the ground that MMA had not qualified to do business in Alabama, as required by the door-closing statute, and, consequently, that MMA could not itself have enforced its contracts *459 in our courts. Id. at 1366. This Court reversed, holding that the door-closing statute did not prevent National American, "which had qualified to do business in the state," 700 So.2d at 1364 (emphasis added), from recovering from Boh Brothers, under the doctrine of equitable subrogation, amounts due from Boh Brothers to MMA that National American had paid on the claims of MMA's creditors. Id. at 1365-67.
As an alternative holding, the Court stated: "[T]he Interstate Commerce Clause of the Federal Constitution prohibits the application of that door-closing statute in this case." 700 So.2d at 1367 (emphasis added). In support of that conclusion, the Court discussed the holding and rationale of Cornwall & Stevens Southeast, Inc. v. Stewart, 887 F.Supp. 1490 (M.D.Ala.1995).
Stewart involved an action by Cornwall & Stevens Southeast, Inc. ("Cornwall"), against Ralph Stewart, its former employee, to enforce a noncompetition provision in an employment contract. Id. at 1490-91. It was undisputed that Cornwall was a foreign corporation "not registered to do business in Alabama." Id. at 1491. Cornwall contended, however, that it was "exempt from the registration requirement by virtue of the fact that [it was] engaged in interstate commerce." Id. The court concluded that the action fell "within the interstate commerce exception to the Alabama door closing provisions." Id. at 1494 (emphasis added). The court explained that "[t]he nature of the plaintiffs' business, insurance sales across state lines, [was] interstate." Id. Also, the court explained:
"Additionally, the plaintiff ... in this case [was] engaged in writing and servicing insurance policies in many different states, including Alabama. Furthermore, the relationship between the parties to the contract was interstate in nature. Finally, intended activities of the defendant himself in selling and servicing policies do not appear to have been limited to this state alone, in that it appears that it was intended for the defendant to sell and service insurance contracts not only within Alabama, but also in Georgia and Florida."
Id. Thus, Cornwall heldnot that the door-closing statute was unconstitutional but that Cornwall's claims fell within a well-recognized exception to the statute's prohibition.
Cornwall's analysis followed a wellworn path, explaining that "pursuant to the Commerce Clause, ... Alabama courts have consistently recognized an exception to this preclusion for non-registrants engaged in interstate commerce. See, e.g.,... North Alabama Marine, Inc. v. Sea Ray Boats, Inc., 533 So.2d 598 (Ala. 1988)...." Id. at 1492 (emphasis added). Indeed, this Court, in North Alabama Marine, explained that well-recognized rule as follows:
"Section 232 of the Alabama Constitution 1901, and Ala.Code 1975, § 10-2A-247 and § 40-14-4, bar a foreign corporation not qualified to do business in Alabama from enforcing its contract in the courts of this state. These laws apply, however, only when the business conducted in this state by the non-qualified corporation is intrastate in nature. Wallace Construction Co. v. Industrial Boiler Co., 470 So.2d 1151 (Ala.1985); Johnson v. MPL Leasing Corp., 441 So.2d 904 (Ala.1983). A non-qualified foreign corporation is not barred from enforcing its contracts in Alabama when its activities within this state are incidental to the transaction of interstate business. Wallace; Johnson, supra. Under the Constitution of the United States, a state cannot prohibit foreign corporations from conducting interstate business within its borders. Kentucky Galvanizing Co. v. Continental Casualty Co., 335 So.2d 649 (Ala.1976); Article I, § 8, cl. 3, United States Constitution."
533 So.2d at 600-01 (emphasis added).
Clearly, Cornwall cannot be read as invalidating our door-closing statute. On *460 the contrary, the United States Supreme Court held long ago that state door-closing statutes, properly applied, are constitutional. More specifically, that Court has "held that a state's forum-closing statute does not unduly burden interstate commerce when the foreign corporation has `"localized its business"' in the state and when it is not entering the state `"to contribute to or to conclude a unitary interstate transaction."'" S & H Contractors, Inc. v. A.J. Taft Coal Co., 906 F.2d 1507, 1511 (11th Cir.1990) (quoting Allenberg Cotton Co. v. Pittman, 419 U.S. 20, 32-33, 95 S.Ct. 260, 42 L.Ed.2d 195 (1974) (quoting Union Brokerage Co. v. Jensen, 322 U.S. 202, 210, 64 S.Ct. 967, 88 L.Ed. 1227 (1944))), cert. denied, 498 U.S. 1026, 111 S.Ct. 677, 112 L.Ed.2d 669 (1991).
Similarly, National American cannot be read as invalidating our door-closing statute. A careful reading of National American reveals that in that caseas in Cornwall the Court was merely applying our well-settled rule to the facts before it, illustrated by the words "in this case." 700 So.2d at 1367 (emphasis added). I concurred specially in that case, however, to object to the consideration of the door-closing statute as a basis on which to reverse the judgment. Id. at 1369 (Cook, J., concurring in the result).
Boh Brothers Construction Co. v. Nelson, 730 So.2d 132 (Ala.1999), involved another installment in the National American litigation. That case raised four issues, including: "(1) whether Nelson's claims [were] barred by the doctrine of res judicata, based on the outcomes in [previous installments of that litigation]," and "(2) whether Nelson's claims [were] barred by [the door-closing statute]." 730 So.2d at 133. We held, among other things, that Nelson's claims were barred by the doctrine of res judicata and that the second issue, namely, the applicability of the door-closing statute, was "moot." Id. at 133. I concurred in that holding.
Despite this holding as to the mootness of the door-closing statute, the Courtas it did in National American, based on the same underlying factssuggested that the door-closing statute did not bar the claims.[2] Consequently, I could have filed another special writing in Boh Brothers consistent with my special concurrence in National American, specifically objecting to any reference to the door-closing statute. At any rate, Boh Brothers clearly does not hold, or even fairly imply, that the door-closing statute is unconstitutional and invalid.
For these reasons, § 10-2B-15.02(a) is valid, constitutional, and, as Justice Johnstone aptly demonstrates, applicable in this case. Therefore, I respectfully dissent.
KENNEDY, J., concurs.
JOHNSTONE, Justice (dissenting).
The majority holds that the Hart affidavit proves the arbitration agreements at least to the extent of swearing to their identity and to the signatures of the plaintiffs on the agreements, and therefore we must reverse and remand the case with instructions to compel arbitration, because the plaintiffs made the mistake of thinking they could reserve their proof of fraud in the inducement for summary judgment motions or for the trial itself. Of course, any party resisting arbitration by claiming fraud in the inducement must present evidence in the form of affidavits, deposition testimony, exhibits, or the like once the party moving to compel arbitration has *461 introduced evidentiary material prima facie identifying the arbitration agreement and proving the signatures thereon.
However, the trial court is due to be affirmed if it is right for any reason, even one not contemplated by the trial judge. See Morrison v. Franklin, 655 So.2d 964 (Ala.1995). In other words, while the trial court cannot be held in error on any ground not asserted to the trial court, it may be affirmed on any ground supported by the facts of record, whether or not argued to or considered by the trial court. As Justice Houston aptly wrote in Smith v. Equifax Services, Inc., 537 So.2d 463, 465 (Ala.1988):
"There is a rather obvious fundamental difference in upholding the trial court's judgment and reversing it; this Court will not reverse the trial court's judgment on a ground raised for the first time on appeal, Costarides v. Miller, 374 So.2d 1335 (Ala.1979), even though it affirms judgments on bases not asserted in the trial court, Bank of the Southeast v. Koslin, 380 So.2d 826 (Ala.1980)." (Emphasis in original.)
Notwithstanding the paucity of the record, the materials before us show that the trial court should be affirmed, not reversed.
The manifest unfitness of the arbitrator is ground for denying a motion to compel arbitration before that arbitrator. See Gaer Bros., Inc. v. Mott, 144 Conn. 303, 130 A.2d 804 (1957); Bole v. Nationwide Ins. Co., 475 Pa. 187, 379 A.2d 1346 (1977); Nadalen Full Fashion Knitting Mills, Inc. v. Barbizon Knitwear Corp., 206 Misc. 757, 134 N.Y.S.2d 612 (N.Y.Sup.Ct.1954); Bernard v. Hemisphere Hotel Management, Inc., 16 Mass.App.Ct. 261, 450 N.E.2d 1084 (1983). The record in this case, and notably the arbitration agreement form itself, quoted at some length by the majority, reveals the arbitrator organization itself to be unfit in two respects.
First, the record shows that the arbitrator organization, Employment Dispute Services, Inc. ("EDSI"), in collaboration with the employer, Ryan's Family Steak Houses, enlisted as its own clients or customers not only these plaintiff employees but also all other applicants for employment with Ryan's. The arbitration agreement form drafted, executed, and promoted by EDSI goes so far as to require each other contracting party to agree that "I absolutely must use the EDSI forum...." This solicitation is unseemly for a judge, as an arbitrator is supposed to be. The collaboration with Ryan's also creates an inescapable bias in favor of Ryan's.
Second, the arbitration agreement form in the context of the record shows that EDSI is collaborating with Ryan's in an elaborate ruse of mutual third-party-beneficiary contracts, with EDSI serving as the straw man in each contractsome with Ryan's and its managerial personnel as the other contracting parties, and others with the applicants for employment as the other contracting parties, and with the arbitration provisions binding and benefiting both sets of other contracting parties not only as such but as third-party beneficiaries of all the other contractsall for the obvious purpose of giving Ryan's all of the benefits of an employment contract with arbitration provisions but without any of the burdens of a written employment contract. The following language in the arbitration agreement form is noteworthy in this regard:
"C. This agreement is with EDSI, not the Company, and is not, nor is it intended to be, an employment contract or any part of an employment contract. This agreement does not affect or alter My `at will' employment relationship with the Company.
"D. The Company and any other successor or assign, its signatory supervisors, managers, and other agents, are `third party beneficiary' of My agreement with EDSI, and I am a `third party beneficiary' of others' agreements with EDSI. A `third party beneficiary' is someone who benefits legally from a contract between two other parties."
*462 This ruse, too, pursued in collaboration with Ryan's, creates in EDSI an inescapable bias in favor of Ryan's.
The facts revealing the unfitness of EDSI to serve as arbitrator for these opposing parties appear in the record considered by the trial court and by the Supreme Court. Neither EDSI nor Ryan's can claim any benign comparison between EDSI and the American Arbitration Association ("AAA"), which is frequently chosen and named in arbitration agreements without any solicitation or collusion by the AAA.
Furthermore, without contradiction in the record and at all times pertinent to this inquiry, EDSI has been a foreign corporation doing business but not qualified to do business in Alabama,[3] subject to the constraints and sanctions of §§ 10-215.01 and 10-2B-15.02, Ala.Code 1975. While controverted pleadings do not constitute evidence in a factual dispute, in this case the plaintiffs assert in their amended complaint, and EDSI and Ryan's do not controvert by answer, denial, or other filings, that EDSI was doing business while not qualified to do business in Alabama in 1996 when the plaintiffs signed the arbitration agreements. "For purposes of ruling on a motion for summary judgment, uncontradicted facts alleged in the pleadings and affidavits are taken as true." Hudson-Thompson, Inc. v. Leslie C. King Co., 361 So.2d 541, 542 (Ala.1978) (emphasis added); Ray v. Midfield Park, Inc., 293 Ala. 609, 308 So.2d 686 (1975). Ryan's' motion to dismiss and petition to compel arbitration[4] is supported by the Hart affidavit and documents attached to the affidavit (albeit without the particular denials aforesaid) and, therefore, should be treated as a motion for a summary judgment. Graveman v. Wind Drift Owners' Ass'n, Inc., 607 So.2d 199 (Ala.1992); Sutton v. Mitchell Co., 534 So.2d 289 (Ala. 1988). Even without the summary judgment procedural posture, a motion to compel arbitration is analogous to a motion for summary judgment; and the rule of the probative value of uncontroverted pleadings is equally applicable to it. The record further discloses without contradiction that the plaintiffs signed the arbitration agreements with EDSI, and Ryan's personnel witnessed them, in Alabama.
Section 10-2B-15.02(a), Ala.Code 1975 (1998 Supp.), provides as follows:
"A foreign corporation transacting business in this state without a certificate of authority or without complying with Sections 40-14-1 to 40-14-3, inclusive, 40-14-21, or 40-14-41, may not maintain a proceeding in this state without a certificate of authority. All contracts or agreements made or entered into in this state by foreign corporations prior to obtaining a certificate of authority to transact business in this state shall be held void at the action of the *463 foreign corporation or any person claiming through or under the foreign corporation by virtue of the contract or agreement; but nothing in this section shall abrogate the equitable rule that he who seeks equity must do equity." (Emphasis added.)
Under the undisputed facts and the foregoing statutory law, the arbitration agreements between the plaintiffs and EDSI are void and unenforceable. See Delta Constr. Corp. v. Gooden, 714 So.2d 975 (Ala.1998).
Ryan's' reliance on the arbitration agreements signed by the plaintiffs is based upon Ryan's' standing as a third-party beneficiary of these agreements. "`The law is clear that a third party beneficiary is bound by the terms and conditions of the contract that it attempts to invoke. "The beneficiary cannot accept the benefits and avoid the burdens or limitations of a contract."'" Georgia Power Co. v. Partin, 727 So.2d 2 (Ala.1998) (quoting Interpool Ltd. v. Through Transport Mut. Ins. Ass'n Ltd., 635 F.Supp. 1503, 1505 (S.D.Fla.1985)) (quoting Trans-Bay Engineers & Builders, Inc. v. Hills, 551 F.2d 370, 378 (D.C.Cir.1976)). Thus the voidness of the contract under which Ryan's claims arbitration constitutes valid ground for the decision of the trial court to deny Ryan's' motion to compel arbitration; and this court should not reverse that ruling.
Because the unfitness of EDSI and the voidness of the arbitration agreements, appearing of record, severally support the ruling by the trial court, I would affirm.
NOTES
[1] Justice Johnstone is correct in stating that a motion to compel arbitration is analogous to a motion for a summary judgment. See Allied-Bruce Terminix Cos. v. Dobson, 684 So.2d 102 (Ala.1995). Therefore, the propriety of a ruling on a motion to compel arbitration, like the propriety of a ruling on a summary-judgment motion, must be tested by reviewing the pleadings and the evidence the trial court had before it when it ruled. Of course, this Court's reasoning is not limited to that applied by the trial court. See Broadmoor Realty, Inc. v. First Nationwide Bank, 568 So.2d 779 (Ala.1990); Hurley v. Marshall County Comm'n, 614 So.2d 427 (Ala.1993).

Ryan's filed an "ANSWER OF DEFENDANTS" on June 26, 1998, seven days after the Employees' amended complaint was filed on June 19, 1998. In its answer, at paragraph no. 47, Ryan's asserted: "Defendants deny each and every allegation contained in the Complaint not specifically responded to herein." The allegation in the amended complaint that "EDSI is a foreign corporation that does not and has not during the times relevant hereto received a certificate of authority to transact business and has otherwise failed to meet the requirements of § 10-215.02 of the Code of Alabama (1975)" was "not specifically responded to" in the answer; therefore, that allegation was controverted. As Justice Johnstone concedes in his dissent, "controverted pleadings do not constitute evidence in a factual dispute." 735 So.2d at 462. (Emphasis omitted.) Therefore, considering the state of the record, the order of the trial court should be reversed if that court denied arbitration based upon Ala.Code 1975, § 10-2B-15.02(a).
Justice Johnstone states in a footnote that "No. 47" of the answer applies only to "Defenses to Count Four (Negligent Training and Supervision)." 735 So.2d at 462. This is not correct.
Count Four, "Negligent Training and Supervision," contained three numbered paragraphs1, 2, and 3and a "Wherefore, the plaintiffs demand judgment" paragraph. That was all that was alleged in Count Four. In the defense to Count Four, the defendants pleaded as follows (paragraph no. 42 was the last paragraph addressing Count Three): "43.
"Defendants repeat and reallege all of their answers to the allegations contained in the prior paragraphs of Plaintiffs' Complaint as though fully set forth in response to Paragraph 1 of Count Four of the Complaint. "44.
"Defendants deny each and every allegation contained in Paragraph 2 of Count Four of the Complaint. "45.
"Defendants deny each and every allegation contained in Paragraph 3 of Count Four of the Complaint. "46.
"Defendants deny that Plaintiffs are entitled to any relief requested in the `WHEREFORE' provision of Count Four of the Complaint or any relief whatsoever."
(Emphasis added.)
Therefore, by paragraph no. 46 of their answer, the defendants had responded to every paragraph and allegation in Count Four.
Immediately before the "FIRST AFFIRMATIVE DEFENSE," which appears as paragraph no. 48, the following general denial appears: "47.
"Defendants deny each and every allegation contained in the Complaint not specifically responded to herein."
(Emphasis added.)
The record is also clear that Ryan's made a prima facie showing that it was entitled to arbitrate the Employees' claims. The Employees failed to present any evidence tending to rebut that prima facie showing. No evidence in the record indicates that Ryan's and EDSI are engaged in any form of fraud or collusion. We cannot presume fraud or collusion under the facts of this case, for to do so would effectively nullify any arbitration agreement calling for the use of a particular arbitration organization (e.g., the American Arbitration Association).
[2] Besides the initial statement of the issue set forth in the text, supra, Boh Brothers contains only two substantive references to the door-closing statute. First, it states: "This Court in National American held that the 1-165 construction project was sufficiently connected with interstate commerce to preclude the application of [the door-closing statute]." 730 So.2d at 134 (emphasis added). Second, it states: "Although we believe the federal court's holding applying [the door-closing statute] to bar the claim was incorrect, that holding became res judicata with respect to the parties involved." 730 So.2d at 134.
[3] These uncontroverted allegations appear for the first time in Count Five of the plaintiffs' "Amended Complaint," which added Count Five and Count Six to the original "Complaint." EDSI filed no answer or other denial whatsoever. Likewise, Ryan's filed no answer or other denial of any kind to the "Amended Complaint" and therefore filed no answer or denial to the allegations in Count Five that EDSI was a foreign corporation doing business but not qualified to do business in Alabama. After the plaintiffs filed their "Amended Complaint" adding Count Five and Count Six, Ryan's belatedly filed an answer on behalf of itself and its managers addressing only the four counts of the original Complaint and in no way addressing Count Five. Only in that part of Ryan's' single answer expressly limited by Ryan's' own subtitle "Defenses to Count Four (Negligent Training and Supervision)" does Ryan's include the statement, "Defendants deny each and every allegation contained in the Complaint not specifically responded to herein." (Emphasis added to reemphasize that Ryan's never responded to the Amended Complaint containing Count Five at all.) Nowhere in the record does Ryan's assert either that EDSI was not doing business in Alabama or that it had qualified to do business in Alabama.
[4] The filing entry on the case action summary denominates it a "petition" to compel arbitration, and the ruling entry denominates it a "motion."